STATE *v.* CARROLL T. WILSON.

January Term, 1938.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed February 1, 1938.

*John T. Conley,* State's attorney, for the State.

*Wayne C. Bosworth* for the respondent.

MOULTON, J. The respondent demurred to a complaint charging him with setting up and promoting a lottery in contravention of P. L. 8683. The demurrer was sustained, *pro forma,* and the State excepted. The cause was passed to this Court before final judgment, as provided by P. L. 2425.

The complaint was originally in two counts, but the first of these was waived below. The second count alleges in substance that the respondent, as manager and operator of the Campus Theatre, in Middlebury, set up and promoted a scheme known as "Cash Nite," which was conducted as follows: The members of the public were invited to write their names upon cards provided for the purpose and to deposit the cards in a registration box placed in the lobby of the theatre, and it was advertised that upon a certain day a drawing would be had, and a prize of $70 would be given to the person whose name was on the card drawn, provided such person should appear within the theatre within one minute after the result was announced and claim the prize, failing which the sum of $20 would be added to the prize and another drawing would take place upon a later day. No charge was made for registration, and every person who registered was entitled to participate in the drawing without being required to attend the performance given in the theatre, purchase a ticket of admission or pay any money. Under these conditions large numbers of persons registered their names; the drawing was publicly held in the theatre on the appointed evening; a name was drawn and announced from the aisle within the theatre, and the person whose name was drawn, if in the lobby, or outside the theatre, would be permitted to enter therein to claim and receive the prize.

The issue raised by the demurrer is whether the foregoing facts, as stated in the complaint, constitute the setting up and promotion of a lottery.

P. L. 8683 does not describe a lottery. The word "has no technical meaning distinct from its popular meaning, and may be defined as a scheme whereby one or more prizes are distributed by chance among persons who have paid or promised a consideration for a chance to win them." *State* v. *Williams*, 108 Vt. 7, 9, 182 Atl. 202, 203; *State* v. *Wersebe*, 107 Vt. 529, 532, 181 Atl. 299. There are here, it is admitted, sufficient allegations of chance and prize; the question of consideration is the only one before us.

There is, of course, no legal reason why a person who is *sui juris*, and who is not acting in fraud of his creditors, may not make a gratuitous distribution of his money or property by chance. But where the privilege of participation in a drawing for a prize is made dependent upon the purchase of a ticket of admission to a theatre, the transaction is a lottery, because the price of the ticket includes not only the right to attend the entertainment, but also the chance to win the prize, and a valuable consideration has been paid. *People* v. *Miller*, 271 N. Y. 44, 2 N. E. (2d) 38, 39; *Sproat-Temple Theatre Corp'n* v. *Colonial Theatrical Enterprise*, 276 Mich. 127, 267 N. E. 602, 603; *Society Theatre* v. *City of Seattle*, 118 Wash. 258, 203 Pac. 21, 22; *Shanchell* v. *Lewis Amusement Co.* (La. App.), 171 So. 426, 428. Whether the scheme is no less a lottery when the purchase of a ticket is not required, and the drawing is open to those registrants who have paid no admission, as well as to those who have, is a question upon which the authorities are not harmonious. This sort of operation, sometimes called "Bank Night," is identical with the "Cash Nite" described in the complaint. It is said in *Commonwealth* v. *Wall* (Mass.), 3 N. E. (2d) 28, 30: "A game does not cease to be a lottery because some, or even many of the players are admitted to play free, so long as others continue to pay for their chances * * *. So here the test is not whether it was possible to win without paying for admission to the theatre. The test is whether that group who did pay for admission were paying in part for the chance of a prize." In *Iris Amusement Corporation* v. *Kelly*, 366 Ill. 256, 8 N. E. (2d) 648, 653, the Court said: "We may look at this thing

realistically and sensibly. We know that those within the theatre pay for any chance anyone outside may have to win." And in *State ex rel. Hunter, Atty. Gen'l* v. *Fox Beatrice Theatre Corp'n* (Neb.), 275 N. W. 605, 606: "They [the purchasers of tickets] made a contribution to an increased income out of which a prize could be paid, a fund created by many to be drawn by the holder of a single lucky number on a tiny card. This contribution, under the practical operation of 'bank night' is the consideration actually paid for a chance for a prize and it is no less effective for that purpose because large numbers of registrants do not pay for theatre tickets or occupy seats at the drawing. The prize offered to a registrant without a theatre ticket, if he can personally claim it within two minutes after the drawing, though outside at the time, is a cloak to hide an evil design and to evade and cheat the law." *Willis* v. *Young and Stembridge* (1907), 1 K. B. 448, is an illustration of the same principle. The proprietors of a weekly newspaper made a gratuitous distribution of medals, each bearing a distinctive number, and the words "keep this it may be worth £100. See the *Weekly Telegraph* today." The paper was sold for one penny, and a medal was never given at the same time as the sale. The production of a paper was not required as a condition to the receipt of the prize, which was awarded to the winning numbers selected arbitrarily by an employee of the paper. The names of those who had secured the prizes were published in the paper, and the object of the distribution of the medals was to induce the recipients to purchase copies of the paper, and the circulation was thereby increased. It was held (pp. 454-455) that the money for the prizes came out of the receipts, and these, in turn, came to a considerable extent from the purchasers of the paper. The recipients of the medals, therefore, contributed collectively (though each individual may not have contributed) sums of money from which the profits of the newspaper and the prize money were derived. If the scheme had been to deliver a medal with each copy of the paper to the person buying it, it would have been a lottery, and the mischief was the same under the facts of the case.

Among the decisions adopting this view are *City of Wink* v. *Griffith Amusement Co.* (Tex. Sup.), 100 S. W. (2d) 695, 699; *State* v. *Danz*, 140 Wash. 546, 250 Pac. 37, 48 A. L. R. 1109;

*State ex rel. Beck* v. *Fox Kansas Theatre Co.,* 144 Kan. 687, 62 Pac. (2d) 929, 109 A. L. R. 698, 708; *Glover* v. *Malloska,* 238 Mich. 216, 213 N. W. 107, 108, 52 A. L. R. 77; *Central States Theatre Corp'n* v. *Patz* (D. C.), 11 Fed. Supp. 566, 568; *State* v. *McEwan* (Mo. Sup.), — S. W. (2d) —. There are cases to the contrary, which hold that the fact that no admission is charged as a prerequisite to participation in the drawing, prevents the scheme from being a lottery. Among them are *State* v. *Hundling,* 220 Iowa, 1369, 264 N. W. 608, 103 A. L. R. 864, 865; *State ex rel. Atty. Gen'l* v. *Crescent Amusement Co.,* 170 Tenn. 351, 95 S. W. (2d) 310, 312, 313; *City of Roswell* v. *Jones,* 41 N. M. 258, 67 Pac. (2d) 286, 290, 291; *Yellow-Stone Kit* v. *State of Alabama,* 88 Ala. 196, 7 So. 338, 7 L. R. A. 599, 604, 605, 16 A. S. R. 38; *People* v. *Shafer,* 289 N. Y. S. 649, 652, 653, 160 Misc. 174, aff. without opin., 273 N. Y. 475, 6 N. E. (2d) 410; *Cross* v. *People,* 18 Colo. 321, 32 Pac. 821, 822, 36 A. S. R. 292. In *State* v. *Eames,* 87 N. H. 477, 183 Atl. 590, 592, it was held that, while giving away a few free chances would not save a scheme otherwise objectionable, under the agreed statement of facts in that case, free participation was an actuality.

In general, see Hensley, "The Legality of Theatre Bank Nights," 1 American Lawyer (Sept., 1937), 5ff. for a full review of the authorities on both sides of the question. See, also, annotations 109 A. L. R. 709, 103 A. L. R. 866; Pickett, "Contests and the Lottery Laws," 45 Harv. Law Rev. 1196, 1205ff.

■ We approve and adopt the doctrine of *Commonwealth* v *Wall, supra,* and the decisions in accord with it, and hold, with them, that the fact that a ticket of admission is not required is not sufficient to save the scheme known as "Bank Night," or as here "Cash Nite," from being a lottery.

It is true, however, as the respondent contends, that the complaint in this proceeding does not allege that anyone purchased a ticket on the evening of the drawing; indeed, so far as appears, every registrant remained outside the theatre. So it is argued, in effect, that, as in *State* v. *Eames, supra,* participation was free in actual fact and not in theory only. But the matter is not to be disposed of so lightly. The question of consideration still merits attention.

■■ Ordinarily, a detriment incurred by a promisee at the request of a promisor is a sufficient consideration to support

a contract. 1 Williston on Contracts (revised ed.), par. 102. According to Chitty (Contracts, 17th ed., Ch. II, § 2, p. 23), it may be an inconvenience, no matter how small. The "Restatement of the Law of Contracts" (par. 75) defines consideration for a promise, in part, as "an act other than a promise, or a forbearance \* \* \* bargained for and given in exchange for a promise." See, also, *Ballard* v. *Burton*, 64 Vt. 387, 394, 24 Atl. 769, 16 L. R. A. 664, and cases cited. So here, it may be said that the acts of registration, attendance in the immediate vicinity of the theatre, or in the lobby thereof, on the appointed evening, and entry within the stipulated time after the announcement, were acts done, and a detriment incurred, in response to a promise to award a prize.

 There are cases which hold that the price paid by a participant in a lottery must be something of value and not the formal or technical consideration required to support a contract, and that registration or presence in the lobby of the theatre is not sufficient. *Commonwealth* v. *Wall, supra; People* v. *Shafer, supra; City of Roswell* v. *Jones, supra; State* v. *Eames, supra.* These decisions seem to go upon the theory that the payment of a price means the transfer of money or some specific thing; and in *State* v. *Eames* the statute involved was said clearly to require that pay must be given for the opportunity to participate in a lottery. However, it is unnecessary so narrowly to construe the definition of a lottery adopted by the decisions of this Court. See *State* v. *Williams, supra; State* v. *Wersebe, supra.* To pay a consideration is to furnish or give a consideration. The word "pay" used in this connection may be taken to include the doing of an act or the exercise of a forbearance. It is not apparent why any consideration which would be sufficient to support a contract will not be equally effective if given in return for a chance to win a prize. "The question of consideration does not mean that pay shall be directly given for the right to compete. It is only necessary that the person entering the competition shall do something or give up some right." *Brooklyn Daily Eagle* v. *Voorhies* (C. C.), 181 Fed. 579, 581. See, also, Thomas, "Lotteries, Frauds and Obscenity in the Mails," pp. 21ff; Haley, "The Broadcasting and Postal Lottery Statute," 4 Geo. Washington Law Rev., 475, 482-492.

But the existence of a detriment to the promisee is not, in all cases, determinative of the existence of a consideration, *Ballard* v. *Burton,* 64 Vt. 387, 393, 24 Atl. 769, 16 L. R. A. 664; *Allegheny College* v. *Nat'l Chatauqua Bank,* 246 N. Y. 369, 159 N. E. 173, 57 A. L. R. 980, 982. ''It is hard to see the propriety of erecting any detriment which an instrument may disclose or provide for into a consideration, unless the parties have dealt with it on that footing. In many cases a promisee may incur a detriment without thereby furnishing a consideration. The detriment may be nothing but a condition precedent to the performance of the promise * * *.'' Holmes, Common Law, 292. Although, as the author says, the courts have gone far in obliterating the distinction, it is clear that it is necessary in this case to determine whether the respondent's offer of a prize was a gratuitous promise to be performed upon the happening of a condition, or a promise for which the requested acts on the part of the participants were dealt with by the parties as a consideration—in other words, whether the element of bargain or agreed exchange was present. Restatement, Contracts, par. 75, comment c; *E. I. DuPont de Nemours & Co.* v. *Claiborne-Reno Co.* (8th Cir.), 64 Fed. (2d) 224, 233, 89 A. L. R. 238.

''An offer is a conditional promise, that is, a promise to take effect only if the exchange demanded for it is given * * *. It is, of course, as possible to make a gratuitous conditional promise as a gratuitous absolute promise, but the wording of a gratuitous conditional promise may easily be confused with an offer * **. In theory it seems possible that any event may be named in a promise as fixing the moment, on the happening of which a promisor (not as an exchange for the happening, but as a mere coincidence in time) will perform a promise intended and understood to be gratuitous. The same thing, therefore, stated as the condition of the promise may or may not be consideration, according as a reasonable man would or would not understand that the performance of the condition was requested as the price or exchange for the promise * * *. It is often difficult to determine whether words of condition in a promise indicate a request for consideration or state a mere condition in a gratuitous promise. An aid, though not a conclusive test in determining which interpretation of the promise is more reasonable is an inquiry whether the happening of the condition will

be a benefit to the promisor. If so, it is a fair inference that the happening was requested as a consideration. On the other hand, if * * * the happening of the condition will be not only of no benefit to the promisor but is obviously merely for the purpose of enabling the promisee to receive a gift, the happening of the event on which the promise is conditional though brought about by the promisee in reliance upon the promise will not properly be interpreted as consideration. In case of doubt where the promisee has incurred a detriment on the faith of the promise, courts will naturally be loath to regard the promise as a mere gratuity, and the detriment incurred as merely a condition * * *. But in some cases it is so clear that a conditional gift was intended that, even though the promisee has incurred detriment, the promise has been held unenforceable.'' 1 Williston on Contracts (revised edition), par. 112.

This principle is applied in *Maughs* v. *Porter,* 157 Va. 415, 161 S. E. 242. The defendant announced and invited attendance at an auction of building lots, and advertised that a new automobile would be given away, ''every white person over sixteen years of age'' to have an equal chance, regardless of buying or bidding. The plaintiff, who came within the above description, attended the sale, received a slip of paper from the auctioneer, upon which, at his direction, she wrote her name, and placed it in the box, from which it was later drawn and she was declared the winner of the automobile. The question raised on demurrer was whether on the foregoing facts there was a consideration for the promised award of the car. The court, after quoting from the paragraph in Williston on Contracts to which we have referred, said, ''The object of the defendant unquestionably was to attract persons to the auction sale with the hope of deriving benefit from the crowd so augumented. Even though persons attracted by the advertisement of the free automobile might attend only because hoping to draw the automobile, and with the determination not to bid for any of the lots, some of these might nevertheless be induced to bid after reaching the place of sale. So we conclude that the attendance of the plaintiff at the sale was a sufficient consideration for the promise to give an automobile, which could be enforced if otherwise legal.'' The scheme, therefore, which included the elements of chance, prize and consideration, was a lottery and an illegal contract.

And in Thomas, ''Lotteries, Frauds and Obscenity in the Mails,'' p. 35, § 16, the rule is stated thus: ''Where a promoter of a business enterprise, with the evident design of advertising his business and thereby increasing his profits, distributes prizes to some of those who call upon him or his agent, or write to him or his agent, or put themselves to trouble or inconvenience, even of slight degree, or perform some service at the request of and for the promoter, the parties receiving the prize to be determined by lot or chance, a sufficient consideration exists to constitute the enterprise a lottery though the promoter does not require the payment of anything to him directly by those who hold chances to draw prizes.''

Viewing the matter rationally, we may take it for granted that the respondent is no altruist, and that ''Cash Nite'' is not a charitable enterprise, undertaken without a reasonable hope and well-grounded expectation of profit to flow from an increased patronage of the theatre. The motive back of the scheme was, no doubt, to induce those who registered their names to purchase tickets of admission, by making it greatly to their advantage to do so. Only one minute was allowed the winner to appear after the announcement, and claim the prize. The name was called from the aisle inside the theatre, where it would naturally be difficult for one outside to hear it, and if he did hear it, to gain entrance within the alloted time. In fact, under these circumstances, the chance of successful participation without being inside the theatre, might well be so slight as to be almost, if not quite, illusory. As the court said in *Commonwealth* v. *Wall, supra,* ''A participant inside the theatre would have the advantage of immediate presence in a place of comfort. He could hear the number and the name read. He could identify himself at once. A participant outside the theatre must wait in discomfort in the hope that if his name should be drawn within, he would be notified and would hear the call soon enough to crowd through toward the front of the theatre within such time as might be allowed. The object of the defendant was to fill the theatre, not the lobby or the sidewalk.''

So it appears that the acts of registration and attendance in the lobby or just outside the theatre were, or might reasonably have been expected to be, a benefit to the respondent, and it is, therefore, a fair inference that they were requested as a

consideration for the promise to give a prize. The promise was not a gratuity, and the detriment incurred by the participants was not a mere condition. There was a consideration sufficient to support a contract otherwise legal.

■ In speaking of the object of the respondent we have not confused motive with consideration. The two are distinct, and neither can take the place of the other. 1 Williston, Contracts (revised ed.), par. 111; *Pershall* v. *Elliot*, 249 N. Y. 183, 163 N. E. 554, 556. Motive, object or intention on the part of the promisor is here important only as bearing upon the interpretation of the respondent's offer and in deciding whether what he requested the participants to do was to be merely a condition upon which he would perform his promise, or a consideration for that promise. And, obviously, the fact that the object failed of fulfillment, in that the expected sale of tickets did not take place, does not affect the matter.

■ We hold that the operation of "Cash Nite" as described in the complaint, embracing as it does, the elements of chance, prize and consideration, constitutes a lottery.

*The pro forma ruling is reversed. The complaint is adjudged sufficient and the cause is remanded.*