LESTER T. JOLOVITZ,
*Assignee of Herman J. Mullen*
*vs.*
REDINGTON & CO., INC.

Kennebec.  Opinion, May 13, 1952.

*Jerome G. Daviau,* for Plaintiff.

*H. C. Marden,* for Defendant.

24

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J. This action of assumpsit was brought by Lester T. Jolovitz as Assignee for benefit of creditors of Herman J. Mullen for the amount claimed due on a "Stamp" contract entered into by Redington & Co., Inc. The case was heard by the presiding Justice of Kennebec Superior Court without a jury. Judgment was rendered in favor of the defendant without a specific finding of facts. The case is now before the Law Court on plaintiff's exceptions. The exceptions are overruled.

The principal facts that could have been found on the evidence, by the presiding Justice, are that Herman J. Mullen, the assignor of the plaintiff, was engaged in a sales promotion scheme called "Self-Defense Stamp Club" where for a cash consideration paid to Mullen by the participating store, Mullen was to install in the store, during a stated period, all necessary printed materials, and to furnish radio and newspaper advertising to enable the participating store to purchase stamps of Mullen from time to time, and to issue the stamps to customers in order to increase its sales. Prizes were to be awarded to contestants. The defendant, Redington & Co., Inc. was to pay Mullen $75.00 to enable it to participate, which sum was paid. The contract was to be in effect for one year commencing April 26, 1948. During this period the defendant was to give to its customers from books purchased of and supplied by Mullen, one "Self-Defense Stamp" for each five dollars' worth of merchandise purchased. With each stamp so issued, and taken by the customer, the customer was entitled to cast five thousand votes for himself, or any other person of his choice, towards prizes to the winning contestant to be awarded by Mullen, which prizes consisted of Hudson Automobile, five piece Bedroom Suite, Electric Refrigerator, DeLuxe Model Radio, Electric Washer, etc. On the stamps were reproduc-

tions of various military insignia, and the stamps held by the participating store and given out by it, were made up into books in such a manner that the kind of insignia was concealed, until the storekeeper detached the stamp from his book. The number of duplicate stamps varied greatly. The stamps so issued by the participating store were to be purchased by the store from Mullen at the rate of ten cents for each Stamp. In addition to the "5000 vote" voting privilege to each customer with each stamp, and as part of the stamp scheme, customers received a "stamp album" bearing on its pages facsimiles of the stamps issued and given with the $5.00 purchase, and prizes or awards, either in cash or U.S. Defense Stamps or Bonds, were to be given to the customer when a page, or all the pages, of the album were filled. There was evidence that it was very difficult to fill an album, or some pages of the "album," because the chance of ever getting all the stamps described in the "album" was very remote. A few stamps carrying certain insignia rarely, if ever, appeared.

As one witness testified, "if he was lucky enough to fill the pages he got money * * * it was the idea of folks trying to get money." Another witness said: "You would receive a certain amount depending on which page you would fill (with stamps) * * * three on page 1 $1.00 in cash. Four on page 3 would pay $2.00. Five on page 5 would give $3.00. Five on page 6 would give $4.00, and so on up to page 15, which covers 15 stamps and the amount is $30.00 in cash."

On page 2 of one of the "Stamp albums" introduced in evidence, the cash value is given as follows: "WE PAY YOU TO SAVE Self Defense Stamps and Cash in, as follows: The three stamps listed on page 1 pay you $1.00 in Cash. The four stamps listed on page 3 pay you $2.00 in Cash. The five stamps listed on page 5 pay you $3.00 in Cash. The five stamps listed on page 6 pay you $4.00 in Cash. The five stamps listed on page 7 pay you $5.00 in Cash. The six

stamps listed on page 8 pay you $6.00 in Cash. The six stamps listed on page 9 pay you $6.00 in Cash. The eight stamps listed on page 11 pay you $8.00 in Cash. The nine stamps listed on page 13 pay you $9.00 in Cash. The nine stamps listed on page 14 pay you $10.00 in Cash. The nine stamps listed on page 15 pay you $11.00 in Cash. The ten stamps listed on page 16 pay you $12.00 in Cash. The twelve stamps listed on page 17 pay you $20.00 in Cash. The fifteen stamps listed on page 19 pay you $30.00 in Cash."

The plaintiff claimed, and offered evidence to indicate that the plaintiff's assignor, Herman J. Mullen performed all the conditions of the contract with defendant Redington & Co., Inc. but the defendant failed to perform, in that it failed to give out stamps to every customer that made a $5.00 purchase, and failed to purchase "the first 2000 self defense stamps" and other stamps of Mullen, and failed to purchase stamps required by the amount of its sales.

The defendant contended and offered evidence to show that the stamp scheme was a lottery and that filling the "stamp album" involved chance or gaming, and the defendant offered testimony also, from which it might be found by the Justice hearing the case, that the plaintiff's assignor failed to reasonably advertise by radio and newspaper, as required in the contract; that he failed to list the standing of contestants in the participating stores, whereby the interest in the contest was not properly promoted; and failed to furnish all the material promised; and failed to award the prizes won by certain contestants, all as required by the contract.

In answer to the contentions of the defendant, the plaintiff contended, and offered evidence to indicate that the parties did not "consider" this scheme a lottery but a "discount"; that filling the pages of the stamp album was only

a "minor part" of the whole scheme; that there was advertising according to contract, or there was a waiver that the defendant's complaint about tabulation and listing was waived by defendant; that "since the defendant breached the contract first by failing to give stamps" its first breach rendered complete performance on the part of the plaintiff impossible, because Mullen was not receiving the necessary money to obtain prizes, and at the close of the contest the winners of prizes agreed to accept and did accept a cash arrangement instead of the automobile and other prizes promised.

The decision of the presiding Justice, sitting without a jury, is conclusive if there is any legal and credible evidence to justify his decision. *Cote et al, Appellants,* 144 Maine, 297. It is otherwise if the only inference or conclusion that can be drawn from the evidence does not support the decision. *Grover, Petr.* vs. *Grover,* 143 Maine, 34; *Close* vs. *Blackwell,* 124 Maine, 429, or if there is no evidence to support it. *Proctor* vs. *Carey,* 142 Maine, 226.

A lottery, or scheme as defined by Revised Statutes (1944), Chapter 126, Section 18, is as follows:

"Every lottery, policy, policy lottery, policy shop, scheme, or device of chance, of whatever name or description, whether at fairs or public gatherings, or elsewhere, and whether in the interests of churches, benevolent objects, or otherwise, is prohibited; and whoever is concerned therein, directly or indirectly, by making, writing, printing, advertising, purchasing, receiving, selling, offering for sale, giving away, disposing of, or having in possession with intent to sell or dispose of, any ticket, certificate, share or interest therein, slip, bill, token, or other device purporting or designed to guarantee or assure to any person or to entitle any person to a chance of drawing or obtaining any prize or thing of value to be drawn in any lottery, policy, policy lottery, policy

shop, scheme, or device of chance of whatever name or description; by printing, publishing, or circulating the same, or any handbill, advertisement, or notice thereof, or by knowingly suffering the same to be published in any newspaper or periodical under his charge, or on any cover or paper attached thereto; or who in any manner aids therein, or is connected therewith, shall be punished by ... The printing, advertising, issuing, or delivery of any ticket, paper, document, or material representing or purporting to represent the existence of, or an interest in a lottery, policy lottery, game, or hazard shall be prima facie evidence of the existence, location, and drawing of such lottery, policy lottery, game, or hazard, and the issuing or delivery of any such paper, ticket, document, or material shall be prima facie evidence of value received therefor by the person or persons, company or corporation who issues or delivers or knowingly aids or abets in the issuing or delivering of such paper, ticket, document, or material."

The statute is broad and comprehensive and if there is any element of chance it is "gambling." It was the intention of the legislature to prohibit every pecuniary transaction in which chance has any place, "affording a chance to get something for nothing." If the "element of lot or chance is in it, it is enough." *Lang* v. *Merwin,* 99 Maine, 486, 489; *State* vs. *Willis,* 78 Maine, 70; *State* vs. *Baitler,* 131 Maine, 285; *State* vs. *Googin,* 117 Maine, 102. It is true that some stamps issued by merchants are valid transactions and not within the prohibition of the statute, as the stamps act only as the amount of a discount. The credit, or value in other merchandise, may be given when the stampbook or "album" is filled, or partially filled. Such a plan is lawful to encourage business, if it does not contain the chance or "gaming" element. The same is true of so-called "popularity contests." *Dion* vs. *St. John Bap. Soc.,* 82 Maine, 319. See also *Morris* vs. *Telegraph Co.,* 94 Maine, 423; *State* vs. *Liv-*

*ingston,* 135 Maine, 323; *Berger* vs. *State,* 147 Maine 111, 83 Atl. 2nd., 571; *State* vs. *Pooler, et al,* 141 Maine, 274.

The law leaves the parties to an illegal contract "where it finds them." *Conley* vs. *Murdock,* 106 Maine, 266; *Groton* vs. *Waldoborough,* 11 Maine, 306. "No party can recover for acts or services done in direct contravention of an express statute." *Harding* vs. *Hagar,* 60 Maine, 340. If the contract is a divisible one, and there is a separate price for each of many articles sold, an action may in some cases be maintained for legal items. *Boyd* vs. *Eaton,* 44 Maine, 51. Where the contract is an entirety, and includes both legal and illegal elements, neither can be recovered. *Wirth* vs. *Roche,* 92 Maine, 383. See also *Dyer* vs. *Curtis,* 72 Maine, 181; *Hovey* vs. *Storer,* 63 Maine, 486.

If the contract entered into between the parties contains no element of chance (as claimed in this case by the plaintiff and denied by defendant) and the lottery statute does not apply, the plaintiff must show under his declaration that the contract was performed on his part as alleged. *Rogers* vs. *Brown,* 103 Maine, 478; *Veazie* vs. *City of Bangor,* 51 Maine, 509. The party violating a contract, or failing to complete without legal excuse, has no action to recover pro rata compensation. *Levine* vs. *Reynolds,* 143 Maine, 15, 22.

There was sufficient legal and credible evidence to support, authorize and justify the decision of the sitting Justice in giving judgment for the defendant in the case at bar. He could find and undoubtedly did find that the contract was an illegal one, because the filling of the stamp album and payment for its pages involved chance. On the other hand, he could find that the evidence did not prove that the plaintiff was entitled to recover, if this contract can be construed as legal. The exception to the finding for defendant must be overruled.

Exceptions were also taken by the plaintiff to the admission of certain immaterial testimony regarding failure to

award prizes, as being hearsay; to the admission of a conversation between the parties as to why certain parts of the written contract were struck out, as explaining possible ambiguity; and to testimony relating to the public interest to obtain stamps as bearing on extent of advertising. All of this testimony was neither material nor was it prejudicial. It was not of the slightest importance with regard to the decision made by the Court in this case.

The case was heard by the Court without a jury. The Court rendered a decision for the defendant, and there was ample evidence of unquestioned validity, legality, and credibility to sustain it. It has long been the law in Maine that where a decision is made by the Court, without the intervention of a jury, a party is not aggrieved by the reception of immaterial or illegal testimony if there is sufficient legal testimony to authorize or require the Court to render the decision that was made. *Portland* vs. *Rolfe*, 37 Maine, 400.; *Pettengill* vs. *Shoenbar*, 84 Maine, 104. Inadmissible evidence received by the Court, hearing a case without a jury, furnishes no ground for exception unless it appears that his decision was based in whole or in part on such evidence. *Haskell* vs. *Hervey*, 74 Maine, 192. "Factual decisions made by triers of fact will not be disturbed in appellate proceedings, if supported by credible evidence." Murray, J., in *Brown* vs. *McCaffrey, et al*, 143 Maine, 221, 226.

*Exceptions overruled.*