1997 ME 214

**CLASSIC OLDSMOBILE–CADILLAC–
GMC TRUCK, INC., et al.**

v.

**STATE of Maine, et al.**

Supreme Judicial Court of Maine.

Argued Oct. 7, 1997.

Decided Nov. 4, 1997.

David M. Hirshon, Marshall J. Tinkle (orally) Tompkins, Clough, Hirshon & Langer, P.A., Portland, for plaintiffs.

Andrew Ketterer, Attorney General, Donald W. Macomber (orally), William R. Stokes, Asst. Attys. Gen., Augusta, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Plaintiffs, Classic Oldsmobile–Cadillac–GMC Truck, Inc., and five other car dealerships appeal from a summary judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of defendant State of Maine.[1] Plaintiffs contend that the Superior Court erred as a matter of law in declaring that their proposed method of promoting car sales would constitute an unlawful game of chance for which they must obtain a license pursuant to 17 M.R.S.A. §§ 330–347 (1983 & Supp.1996). Finding no error, we affirm.

[¶ 2] The terms of the promotional plan may be summarized as follows: (1) any person who enters into a lease arrangement for a new vehicle at one of the participating car dealerships during a specified four-week period would automatically have twelve monthly lease payments paid by plaintiffs, if the temperature equaled or exceeded ninety-six degrees fahrenheit at the Portland International Jetport on a subsequent date, and (2)

---

1. Plaintiffs include Classic Buick–GMC Truck, Inc., Bill Dodge Oldsmobile–Buick–Pontiac–GMC Truck, Inc., Westbrook Saturn, Inc., Infiniti of Falmouth, Inc. and Bill Dodge Ford–Lincoln–Mercury, Inc. and will be referred to collectively as "plaintiffs" or "Classic Olds." Defendants include the Attorney General and the Chief of the Maine State Police and will be referred to collectively as "defendants" or the "State."

any person, without purchasing or leasing any vehicle, could submit their name for a drawing during the same four-week period and the winner of the drawing would be eligible to receive the sum of $5,000 if the temperature reached ninety-six degrees.

[¶ 3] In the past, we have held that promotional contests that do not require a purchase are not illegal lotteries or games of chance because there is no consideration. *State v. Bussiere,* 155 Me. 331, 339, 154 A.2d 702, 706 (1959). Initially, plaintiffs argue that this promotion does not require a purchase to participate. They rely on the fact that any person could submit their name into a drawing and have a chance to win $5,000. The Superior Court, however, correctly rejected that argument and found that the plan involves two promotions—one for those who enter into a lease agreement and one for those who do not. Every lessee wins the lease payments if the temperature is reached, but the other entrants participate in a drawing in which only one will win. The State contends and the Superior Court found that the promotion requiring the lease agreement constitutes an unlawful game of chance.

■ [¶ 4] Whether the promotional plan is illegal depends on the following statutory definition of a "game of chance:"

[Any] game, contest, scheme or device in which:

A. A person stakes or risks something of value for the opportunity to win something of value;

B. The rules of operation or play require an event the result of which is determined by chance, outside the control of the contestant or participant; and

C. Chance enters as an element that influences the outcome in a manner that can not be eliminated through the application of skill.

17 M.R.S.A. § 330(2) (Supp.1996).

[¶ 5] Statutory interpretation is a matter of law, *Cook v. Lisbon School Comm.,* 682 A.2d 672, 676 (Me.1996), and we examine the plain meaning of the statutory language in order to give effect to the legislative intent. *Nas-*

*berg v. City of Augusta,* 662 A.2d 227, 229 (Me.1995). With reference to subparagraphs B and C, it is undisputed that the promotional plan involves an element of chance—the temperature on a future date at a particular location, outside the control of the participants, and incapable of being eliminated through the application of skill. Both the customer's lease and the twelve months of free lease payments constitute "something of value,"[2] and, therefore, the sole question is under subparagraph A. Does the participant "stake or risk" any part of the lease consideration for the opportunity to win?

[¶ 6] Risk and stake are not statutorily defined. In common meaning, "risk" conveys "the element of uncertainty in an undertaking." *Black's Law Dictionary* 1193 (5th ed.1979). "Stake" refers to "a deposit made to answer an event, as on a wager." *Black's Law Dictionary* 1259 (5th ed.1979). In *Chenard v. Marcel Motors,* 387 A.2d 596, 600 (Me.1978), we explored the difference between illegal gambling or lotteries and legal competitions and adopted the following definition of "wager:"

[T]wo or more contracting parties, having mutual rights in respect to the money or other thing wagered or, as sometimes said, "staked," and *each of the parties necessarily risks something, and has a chance to make something upon the happening or not happening of an uncertain event.* But a purse or prize offered by a party, and to be awarded to the successful competitor in a contest in which such party does not engage, *nor has any chance of gaining, but only, perhaps, of losing, is without the element of a chance of gain or a risk of loss which characterizes the wager agreement.*

*Id.* at 600 (quoting *Misner v. Knapp,* 13 Or. 135, 139, 9 P. 65, 66 (1885)) (emphasis supplied).

[¶ 7] This present promotion is designed to increase the number of cars leased by offering lessees the chance to win twelve free monthly payments. Plaintiffs hope to derive

---

**2.** 17 M.R.S.A. § 330(8) (1983 & Supp.1996) defines "something of value" in part as: "Any money or property ... or ... promise directly or indirectly contemplating transfer of money...."

profit from an increase in business,[3] and customers hope to win the monthly payments. The mutual element of gain that characterizes a wager is therefore present. Turning to the element of risk, plaintiffs acknowledge their risk but argue that customers have nothing of value at stake and no risk of loss. They argue that even if the customers do not win, they have the car that they have leased.

[¶ 8] Plaintiffs ignore the obvious fact that if the prospect of winning induces anyone to enter into a lease, it follows inexorably that the lease consideration, in part, is provided for that chance. *See Lang v. Merwin*, 99 Me. 4£6, 59 A. 1021 (1905) (for a nickel, machine gives at least one cigar worth a nickel, and a chance to win additional cigars); *State v. Googin*, 117 Me. 102, 102 A. 970 (1918) (for a nickel, machine gives package of chewing gum, plus chance to win trade checks); *State v. Baitler*, 131 Me. 285, 161 A. 671 (1932) (for a nickel, machine gives package of candy mints, plus chance to win tokens); and *Jolovitz v. Redington & Co.*, 148 Me. 23, 88 A.2d 589 (1952) (for each five dollars worth of merchandise, store gave self-defense stamps for chance to win prizes). This is not a case in which the chance to win is gratuitously conferred after the parties make their bargain. By the express terms of the promotion, the chance to win is offered as part of the benefit of the bargain, even though the customer has the right to opt out. A customer responding to such an offer necessarily stakes some part of the consideration on the chance to win.

[¶ 9] Relying on the plain meaning of the language of 17 M.R.S.A. § 330(2), we agree with the Superior Court that plaintiffs' proposed promotional plan involves an illegal "game of chance."

The entry is:

Judgment affirmed.

---

**3.** The case of *Chenard v. Marcel*, 387 A.2d 596 (Me.1978) is readily distinguishable on this point alone. *Chenard* involved a golf tournament sponsored by a nonprofit organization. As part of the tournament, participants had a chance to win a new car if they made a hole-in-one. Marcel Motors agreed to donate the car. Therefore, Marcel Motors engaged in a legal competition because even though it could lose, it had no chance of gaining. *Id.* at 600–601.