The Honorable Lona Horn McCastlain Prosecuting Attorney Twenty-Third Judicial District 301 N. Center St. Suite 301 Lonoke, AR 72086
Dear Ms. McCastlain:
I am writing in response to your request for an opinion regarding certain actions of a bank in connection with its 100th anniversary celebration. You state that as part of the celebration, the bank is giving away gifts by drawing names of customers. You have enclosed a copy of one of the promotional advertisements and a newspaper article about the anniversary campaign. You state further that allegations have been made that these actions constitute gambling, and you have asked:
 Do the actions of this bank constitute an illegal gambling act under Arkansas law?
RESPONSE
A definitive answer to this question will necessarily depend upon all of the attendant facts. As discussed more fully below, it is my opinion that the issue likely focuses on the element of consideration and specifically, whether the bank's actions involve pecuniary risk on the part of the participants. If any payment or cost is exacted of participants that would evidence monetary risk on their part, then I believe the bank's actions may violate both the gambling statutes and the constitutional lottery prohibition. The facts before me are insufficient to definitively ascertain whether this is the case, and I lack the resources and authority to undertake the necessary factual review to conclusively decide the matter. While I am therefore unable to definitively opine in response to your question, I will outline the relevant legal framework that guides the factual analysis.
As an initial matter, I must note that it is unclear whether you are asking for an evaluation of the bank's activities under the criminal statutory prohibitions against gambling (A.C.A. § 5-66-101 et seq.) or under the constitutional prohibition against lotteries (Ark. Const., art. 19, § 14). Because a lottery is a particular type of gambling, I will address both issues. The inquiry is distinct, but similar under each.
The Arkansas Supreme Court has defined a "lottery" as "a species of gaming which may be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." See Scott v. Dunaway,228 Ark. 943, 311 S.W.2d 305 (1958); Shuffield v. Raney, 226 Ark. 3,287 S.W.2d 588 (1956); Burks v. Harris, 91 Ark. 205, 120 S.W. 979 (1909).See also Op. Att'y Gen. 2002-042. With regard to the bank's activities in this instance, the elements of chance and a prize are obvious. The question thus focuses on whether those wishing to participate in the drawings must pay a "valuable consideration." There are no Arkansas cases elaborating on this element in the lottery definition because typically, consideration has been evident in the form of a monetary payment for the chance to win. See, e.g., Shuffield v. Raney, supra; State v. Bass,224 Ark. 976, 277 S.W.2d 479 (1955); Longstreth v. Cook, 215 Ark. 72,220 S.W.2d 433 (1949). According to my research, other state courts are divided on the issue of what constitutes "consideration" for purposes of an anti-lottery provision. This issue is discussed at length in a Texas Attorney General opinion. Tex. Op. Att'y Gen. No. JC-0174 (2000). As noted in that opinion, some courts hold that the requisite consideration is the equivalent of that necessary to support a simple contract, i.e., "a detriment incurred by a promisee at the request of a promisor. . . ."Id. quoting State v. Wilson, 196 A. 757, 760 (Vt. 1938). Under this approach, it is inconsequential that participants are required to pay nothing of value for the chance to win, and to "pay a consideration" can include "the doing of an act or the exercise of a forbearance" in response to a promise to award a prize. 196 A. at 760. Following this view, the Attorney General of South Carolina found consideration and an illegal lottery in a scheme that required a $10.00 deposit in a credit union savings account in order to be eligible for a prize. S.C. Op. Att'y Gen. 3554 (1973). Following the so-called "contract theory of consideration" (see Tex. Op. Att'y Gen., supra), the Attorney General concluded that the scheme resulted in "a detriment or prejudice" to the participants who "necessarily relinquish[ed] their rights to deposit or not deposit their money and the additional right to deposit their money where they should so desire, in order to obtain a chance to win the prize." Id.
Other courts adhere to the view, however, that the phrase "pay a valuable consideration" means that the consideration must have a "pecuniary value." Tex. Op. Att'y Gen., quoting State v. Bussiere, 154 A.2d 702, 707
(Me. 1959). See also Cudd v. Aschenbrenner, 377 P.2d 150 (Or. 1962). The Oregon court rejected the contract theory of consideration following its review of the history of lotteries and the "evil" at which the anti-lottery law was directed, that is, "the impoverishment of the individual and its attendant evils." 377 P.2d at 155. The court noted that the "evils" were the result of "speculation" and that the operation of lotteries "depended upon the wagering by the participants of money or something of monetary value on the chance that they would win something of far greater value." Id. at 154. See also Bussiere, supra, quoted inCudd (the "source of all evil connected with lotteries or gambling" is "a person risking or hazarding something of value, however small, with the hope or opportunity of obtaining a larger sum by chance") and State v.Cox, 349 P.2d 104 (Mont. 1960) (stating that the framers of the Montana Constitution "were seeking to suppress and restrain the spirit of gambling which is cultivated and stimulated by schemes whereby one is induced to hazard his earnings with the hope of large winnings.") After reviewing the history and these cases, the court in Cudd concluded:
 Unless a scheme requires that (1) a participant part with a consideration, and (2) the consideration be something of economic value to him, the participation therein can rob him neither of his purse nor his accumulated wordly [sic] goods. We must conclude, therefore, that the anti-lottery provisions of our statute are directed at schemes in which participants are obligated to contribute something which is of economic value to them as a condition of participation.
377 P.2d at 155.[1]
It is my opinion that if faced with the question, the Arkansas Supreme Court would likely adopt this view of our constitutional lottery prohibition (Ark. Const. art. 19, § 14). As noted above, the court has defined a "lottery" as a species of "gaming" involving "valuable consideration." Longstreth, supra. In determining that a horse race was not a lottery, the court in Longstreth stated:
 Lotteries are of ancient origin, some conducted for benevolent purposes and others solely for gambling. They became so common and their influence so pernicious that efforts were made to prohibit them. In every Constitution we have had the General Assembly has been denied the power to authorize their operation. They were singled out and not treated as other forms of gambling.
This echoes the analysis in Cudd, supra, which looks at the circumstances that spawned lotteries, and leads me to surmise that our court would, similarly, conclude that a "valuable consideration" has not been paid unless money or something of monetary value is involved.
I believe this may be further gleaned from the Arkansas General Assembly's authorization of a particular type of marketing device under A.C.A. § 4-70-102. This Code section provides:
 The method of business advertising conducted in this state by the giving away of prizes consisting of money or other thing of value where no payment of money or other thing of value is required of participants in the awards, whether the advertising plan is entitled `Bank Night,' `Buck Night,' or any other name whatsoever is declared to be a legal form of advertising.
A.C.A. § 4-70-102 (emphasis added).
It might be concluded from this statute that the General Assembly interprets our anti-lottery provision (Ark. Const. art. 19, § 14) as no impediment to a promotion scheme if participants are required to pay nothing of value for the chance to win a prize. Although legislative interpretation of constitutional provisions is never binding on the courts, it is persuasive and entitled to some consideration if there is any doubt or ambiguity. Mears v. Hall, 263 Ark. 827, 569 S.W.2d 91
(1978). There are no helpful Arkansas cases interpreting A.C.A. §4-70-102; but other state courts have found that "bank nights" similar to that contemplated by § 4-70-102 do not violate lottery prohibitions when a person can enter the contest without purchasing a ticket. See Tex. Op. Att'y Gen. JC-0174 (2000) and N.J. Op. Att'y Gen. 6 (1983) (discussing various "bank night" types of operations).[2] If a ticket must be purchased, however, in order to contend for the prize, this has been held to constitute a lottery under the theory that the price paid for the ticket includes the chance to win the prize. As stated by one court: "[I]n such a scheme the purchase of the ticket and the fact that one cannot contend for the prize unless he has purchased such a ticket, establishes the fact of consideration. . . ." Commonwealth v. Lund,142 Pa. Super. 208, 15 A.2d 839, 842 (1940). This principle has been expressed, generally, as follows:
 Where one must make an outlay of money in order to participate in the scheme whereby an award is made by chance, the participant pays a valuable consideration for the chance to participate, notwithstanding the fact he may also receive merchandise at the same time in return.
29 A.L.R.3d 888, 909 (1970). Cf. Classic Oldsmobile-Cadillac-GMC Truck,Inc. v. State, 704 A.2d 333 (Me. 1997) (automobile dealer's promotional plan requiring participants to enter into a lease agreement was an illegal lottery because "[a] customer responding to such an offer necessarilystakes some part of the consideration on the chance to win." Id. at 335 (emphasis added).
Turning, then, to your question involving the bank's anniversary celebration, the issue of whether the bank's actions constitute a lottery depends, in my opinion, upon whether any payment or contribution is required such that a participant will be deemed to have staked something of value on the chance to win a prize in the drawings. The promotional advertisement states in this regard: "No purchase necessary. Must be aCommunity Bank customer to win. Rules and entry forms available at everyCommunity Bank location." No conclusive determination can be made from these statements because further inquiry is required to establish who qualifies as a "Community Bank customer." Even if no "purchase" is necessary as stated in the promotional ad, it is my opinion that a factual review would nevertheless be required to determine whether becoming a "bank customer" entails "valuable consideration." The only information I have in this regard is the quote in the newspaper article that: "It's worth opening an account, since only Community Bank customers can win the prizes." This does not decide the question either. If in fact a person must "open an account" to participate in the drawings, then in my opinion it must be determined whether this involves paying anything or parting with anything of value. See generally Cudd, supra. Although I have found no cases addressing this precise question, it is possible that a court would find no "valuable consideration" if there is no payment or other cost associated in any way with opening and maintaining an account and if any funds that have been deposited can be withdrawn at any time without penalty or charge, the argument being that the customer has risked nothing of value for the chance to win. Accord La. Op. Att'y Gen. 77-162 (opining that a bank's promotion was not a lottery where the drawing for $1000.00 cash was directed at new customers who qualified by opening either a checking account or a savings account, because the participant "forfeits nothing and gives up nothing of value.") If, however, any payment is associated with the bank account or whatever is required to be a "bank customer," then it is my opinion that the banks' promotional activities may constitute a lottery.
A similar analysis is required under the gambling statutes, found at A.C.A. § 5-66-101 et seq. This subchapter prohibits, among other things, the keeping of "gambling houses" (A.C.A. § 5-66-103) and the keeping or exhibiting of "gambling devices" (A.C.A. § 5-66-104) as follows:
 Every person who shall keep, conduct, or operate, or who shall be interested, directly or indirectly, in keeping, conducting, or operating any gambling house or place where gambling is carried on, . . . shall be deemed guilty of a felony. . . .
 Every person who shall set up, keep, or exhibit any gaming table or gambling device, commonly called A.B.C., E.O., roulette, rouge et noir, or any faro bank, or any other gaming table or gambling device, or bank of the like or similar kind, or of any other description although not herein named, be the name or denomination what it may, adapted, devised, or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost, shall be deemed guilty of a misdemeanor. . . .
Although "gambling" is not defined in these statutes, the term "gaming" has been judicially defined as "the risking of money, between two or more persons, on a contest or chance of any kind, where one must be the loser and the other gainer." Portis v. State, 27 Ark. 360, 362 (1872). In Statev. Torres, 309 Ark. 422, 831 S.W.2d 903 (1992), the court extended thePortis definition to apply to "gambling." And the court recently reaffirmed the definition in Pre-Paid Solution v. City of Little Rock,supra, clarifying it to include not only the risking of money, but also of any property interest. 343 Ark. at 323.
This definition contains an element of consideration just as does the definition of a lottery. It seems clear from this definition that gambling can only occur when a participant risks money or property. SeeState v. Torres, supra, 309 Ark. at 425 (stating that "[t]he appellees, who operated bingo establishments where money and risk were plainly involved, had fair warning that their actions were prohibited.") The essence of gambling at which the law is directed is the risk of something of value. Ark. Op. Att'y Gen. 77-37 (concluding that a "Casino Cash" promotion operated by a grocery did not constitute gambling because participation was free and "money or property cannot be lost.") See also
Ark. Op. Att'y Gen. 2002-240 (prize give-away involving no risk of money or other property interest does not fall within the court's definition of gaming or gambling, and may be a type of marketing device specifically authorized by A.C.A. § 4-70-102, supra). Thus, the question of whether the actions of the bank in this instance constitute "gambling" under the Arkansas statutes depends again on whether the participants must risk any money or other property interest. While I cannot conclude based on the limited facts before me that "money and risk [are] plainly involved," (State v. Torres, supra), I am also unable to definitively opine to the contrary. As with the issue of "valuable consideration" under the anti-lottery provision, this can only be determined following a review of all of the facts and circumstances surrounding the bank's celebration activities.
It is apparent from the foregoing discussion that I am forestalled from reaching any ultimate legal conclusions in response to your question due to the inherently factual nature of the inquiry. I have stated, as have my predecessors, on occasions too numerous to cite, that in issuing Attorney General opinions the Attorney General is not empowered as a fact-finder. I have no authority to take evidence or resolve disputed issues of fact, such as determining the exact features of the actions that are in question. In short, these questions are in large degree ones of fact that cannot be resolved in the format of an Attorney General's opinion. The foregoing will hopefully, however, offer a sufficient legal framework to guide the factual review.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Under the facts before it (a promotion scheme in which one registers at the grocery store, signs a coupon to be validated at the store, and is present at the time of the drawing, and which requires no purchase of groceries), the court determined that "no one could be rendered poor by participating in the plaintiff's drawings[,]" and that there was no lottery because "[t]he participant parts with nothing of any value to himself." Id. at 159.
[2] In this contest, which was popular in the 1930s and 1940s, customers of a motion picture theatre registered for a drawing when they purchased tickets for a show. See Casteel v. K. Lee Williams Theatres,Inc., 221 Ark. 935, 256 S.W.2d 732 (1053). As contemplated by A.C.A. §4-70-102, provision was typically made for a participant to enter the contest without purchasing a ticket.