## STATE *vs*. BERT GOOGIN.

### Sagadahoc.    Opinion February 18, 1918.

*R. S., Chap. 130, Sec. 18, interpreted.    Lotteries and games of chance.    Rule to be applied in determining whether a device is a gambling one.*

The respondent is the proprietor of an automatic machine installed in his store for the purpose of vending packages of chewing gum to the public and operates as follows:

In the face of the machine is a window opposite which, with a hand pointing towards it, is inserted a placard which reads:    "Anybody depositing a nickel in the above slot will receive a package of chewing gum together with a number of trade checks shown and indicated here."    The "trade checks" referred to are metal discs which have a trade value in the store of five cents each.    Before the nickel is deposited, in any case, the window is either empty or shows a certain number of trade checks, the exact number being also stated by an indicator at the side of the window.    The number of trade checks so shown and indicated varies from time to time, but the customer always knows before he deposits his nickel whether he will receive gum only or both gum and trade checks; and if he is to receive trade checks, he knows in advance exactly how many.

The value of each of these trade checks is the same; to wit, five cents in trade, and the proportion of the profit from the sales of each thousand packages of gum thereby returned to the customers is constant and known in advance by the owner of the machine.    It is also agreed that each package of gum vended is of the retail value of five cents.

*Held:*

This machine constitutes a gambling device within the provisions of our statute.

Complaint and warrant in which respondent is charged with maintaining and operating a certain automatic gum vending machine contrary to R. S., 1916, Chap. 130, Sec. 18, known as the lottery or gambling statute. Respondent was adjudged guilty in the Municipal Court and appealed to Supreme Judicial Court, where case was reported to Law Court upon certain agreed statements. Judgment in accordance with opinion.

Case stated in opinion.

*Edward W. Bridgham,* for State.

*William C. Eaton,* for respondent.

SITTING: CORNISH, C. J., SPEAR, KING, BIRD, HANSON, JJ.

SPEAR, J. This case comes up on an agreed statement. The respondent is the proprietor of an automatic machine installed in his store for the purpose of vending packages of chewing gum to the public and operated as follows: Upon the deposit in a slot of a five cent piece, or nickel, and the operation of a lever on the side, the machine will automatically deliver to the customers a package of chewing gum. In addition to this purely vending mechanism the machine also contains a device by means of which a certain proportion of the profits resulting from the sales made by the machine is automatically returned to the patrons thereof. This device operates as follows: In the face of the machine is a window opposite which, with a hand pointing towards it, is inserted a placard which reads "Anybody depositing a nickel in the above slot will receive a package of chewing gum together with a number of trade checks shown and indicated here." The "trade checks" referred to are metal discs which have a trade value in the store of five cents each. Before the nickel is deposited, in any case, the window is either empty or shows a certain number of trade checks, the exact number being also stated by an indicator at the side of the window. The number of trade checks so shown and indicated varies from time to time, but the customer always knows before he deposits his nickel whether he will receive gum only or both gum and trade checks; and if he is to receive trade checks, he knows in advance exactly how many.

The value of each of these trade checks is the same; to wit, five cents in trade and the proportion of the profit from the sales of each thousand packages of gum thereby returned to the customers is con-

stant and known in advance by the owner of the machine. It is also agreed that each package of gum vended is of the retail value of five cents.

The question, does this machine constitute a gambling device under our statute?

R. S., 1916, Chap. 130, Sec. 18, provides as follows: "Every lottery, policy, policy lottery, policy shop, scheme or device of chance, of whatever name or description, whether at fairs or public gatherings, or elsewhere, and whether in the interests of churches, benevolent objects or otherwise, is prohibited; and whoever is concerned therein, directly or indirectly, by making, writing, printing, advertising, purchasing, receiving, selling, offering for sale, giving away, disposing of, or having in possession with intent to sell or dispose of, any ticket, certificate, share or interest therein, slip, bill, token or other device purporting or designed to guarantee or assure to any person or to entitle any person to a chance of drawing or obtaining any prize or thing of value to be drawn by any lottery, policy, policy lottery, policy shop, scheme or device of chance of whatever name or description. . . . . shall be punished by fine," etc.

In *Lang* v. *Merwin*, 99 Maine, 486, an interpretation has been given to this statute in this language: "It would seem from these to have been the intention of the legislature to prohibit every pecuniary transaction in which pure chance has any place. There are no words of limitation or exception. To give effect to this intention it would seem necessary to hold that the legislature has used the term "gambling" in its broadest, most generic sense, as comprehending every species of game or device of chance."

The case upon which this interpretation was given involved a slot machine in which the player deposited a nickel in the slot and in any event was entitled to a five cent cigar, and in addition thereto upon the appearance of certain cards, two, four, six or eight additional cigars, depending upon the arrangement of the cards upon the turn of the lever. Upon this state of facts the court further says: "In the case before us it is idle to assume, or concede, that the person putting his five cents into the machine may be doing so merely as a means or mode of buying a five cent cigar. It is idle to deny that the impelling motive is the hope of getting other cigars for nothing. If the machine did not afford that chance it would not be used."

The language of the statute and the interpretation given it in the opinion quoted, show that the legislature intended to place an inhibition upon every possible conception or device, the use of which involved the possibility of chance.

But respondent says the gum machine involves no element of chance; that each play of the machine is a completed transaction, and shows precisely what the player is to receive, and what the machine is to give; that there is no contract express or implied that the player shall have a second or third play to avail himself of the opportunity of obtaining the trade checks; that, this being so, there is no element of chance. But the fallacy of this contention is found in the assumption that the machine deals with the individual, whereas by its method of operation, of necessity, it deals with the public. It is an automatic device, the operation of which is planned in every detail before it is put in use. It is then placed in public places, to be automatically worked. It is the dumb agent of its owner, inviting the public to operate it, as often, and as many times, as any one of the public may please. We find no limitation upon the right of the same person to operate over and over again. It is undoubtedly this unlimited right that allures the patronage that makes the operation of the machine profitable. If the player does not win the first time, he knows he can repeat till he does win. It is, therefore, quite apparent that it is the prize, and not the gum, that invites the public. Accordingly, while each play is a completed act, it may be only preliminary to the future play, by the same person, which will bring forth the coveted prize, the chance in this operation being, not in the visible play, which may show only a package of gum, but in the invisible play by which the machine may turn up a visible prize to be captured on the next play. If a play turns up no premium, neither party loses. If it does turn up a premium, then the machine loses on that particular play.

But it is said there is no loss to the machine in the end, and consequently no chance, because the machine has calculated the profits and losses beforehand, and set apart a certain part of the profits to be allowed its customers. True, but not to all customers alike. Some get something; some get nothing; some more; some less. In this lies the test of what this device means, and the theory upon which it is conceived and worked, namely, to induce customers to play the machine with the expectation of getting something for nothing—it

matters not what customer is successful—as it is perfectly obvious that one part of the public pays, in money, for what another part of the public gets, in prizes. In other words, this machine is a device designed to play one part of the public against another part of the public, for the purpose of inducing the whole public to take the chance of gain, which in the end results in producing to its owner the predetermined profits.

It is also claimed that this device is in the nature of a profit sharing enterprise, or similar, in its purpose, to the practice of department stores in offering premiums to the departments showing the largest increase of profits. But a department store does not take profits from one part of its customers or employes with which to pay premiums to another part. No one set of customers is predestined to pay an extra price for the purpose of contributing funds for the payment of awards. But the owner of this machine, *in advance*, takes money out of one part of the public and gives it to another part, whose winnings depend upon the chance, *arranged in advance*, of just when and just how much, a certain play of the machine will produce to the player who is lucky enough to approach it at the moment of the predestined play. If he, then, draws twenty checks valued at five cents each, he wins, in addition to his gum, one dollar. Another may win ten checks; another, five; an inequality of value probably running through the whole list of prizes.

This transaction cannot be regarded as a "profit sharing" enterprize, as we understand the phrase, nor a legitimate distribution of premiums for services rendered, as in the case of department stores. This interpretation of the inception and purpose of this machine is fully sustained by several well reasoned opinions, while none are cited against it. *Ferguson v. State*, 178 Ind., 569, 99 N. E., 806, is a case precisely in point, involving a machine identical with the one under consideration respecting commodity, operation and purpose. Quoting from a New York case the court say: "The chief element of gambling is the chance or uncertainty of the hazard. The chance may be in winning at all, or in the amount to be won or lost. In using the present machine we may assume that the player cannot lose. By far the greater majority of the checks called in trade for the precise sum deposited in the slot. If every ticket represented five cents, the machine would not be patronized. The bait or inducement is that the player may get one of the checks for a sum in excess of the nickel

he ventures, and that is the vice of the scheme. If he wins more than he pays, the proprietor must lose on that discharge of the ticket. To constitute gambling it is not important who may be the loser."

Upon the point that the machine indicates the exact amount of the award for which it is played, it is further said: "In the present case, the fact that the machine would indicate the reward before it was played makes no difference. The inducement of each play was the chance that by that play the machine would be set to indicate that it would pay checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing. The machine appealed to the player's propensity to gamble, and that is the vice at which section 2474 is directed. The inventor of the machine has endeavored "to adhere to the letter of the law while violating its spirit, "and, as always must be the results, has failed." *State* v. *McTear*, 129 Tenn., 535, 167 S. W., 121, is another case precisely in point, holding the same view.

Without attempting to answer the other grounds upon which the defendant contends this machine may be regarded as an innocent device, we think it sufficiently appears from what we have already discovered, that the operation of this machine is in violation of the intention of the legislature, as expressed in the unlimited inhibition found in the statute.

In accordance with the agreed statement, the entry must be,

*Case to stand for trial.*