# Richmond

## MRS. N. S. MAUGHS v. H. P. PORTER.

November 12, 1931.

Present, All the Justices.

The opinion states the case.

*R. G. Deane* and *McCue & McCue,* for the plaintiff in error.

*Allen, Walsh & Waddell* and *Kirsh & Bazile,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

The record discloses that to the plaintiff's notice of motion

for $461.00 the defendant filed a general demurrer, which was sustained. To that judgment plaintiff has been allowed a writ of error.

The motion is based upon these facts: The defendant inserted this advertisement in the "Daily Progress," a newspaper published in Charlottesville, Virginia:

"NEW MODEL FORD FREE.

"At the auction fifty (50) beautiful residence lots Fry's Spring, Thursday, October 13th, 1:30, on time. Every white person over sixteen (16) years of age has an equal chance at the new Ford regardless of buying or bidding. Come to the auction of Oak Lawns."

Responding to that advertisement, the plaintiff, a white person over sixteen years of age, attended the sale and received from the defendant a slip of paper upon which, by direction of the auctioneer, she placed her name, and deposited in a box held by the auctioneer. Upon the drawing of the slip from the box she was adjudged the winner of the automobile. In response to the auctioneer's demand, she paid him $5.00 for his services in drawing the lucky number.

The defendant placed an order for the car with the Albemarle Motor Company, but refused to pay for it when it was ready for delivery, and has also refused the demand of the plaintiff that he pay her the value of the car, alleged to be $461.00.

The defendant demurred to the notice of motion, alleging two grounds, thus stated: (1) That the matters alleged in the plaintiff's notice of motion fail to show a sufficient consideration for defendant's promise, and that defendant's promise is *nudum pactum* and hence unenforceable; (2) that in so far as there was any consideration for defendant's promise, the scheme alleged in the notice of motion is a lottery or raffle, and any contract which might otherwise arise therefrom is illegal and unenforceable.

The questions then are: (1) Whether the alleged offer to .

make the gift can be enforced as supported by a sufficient consideration; and, if it should be determined that there was such a consideration as would otherwise support the gift, then (2) whether the transaction constitutes a lottery, which is prohibited by Constitution, section 60, and by statute, Code, sections 4693, 4694.

■ *First.* In *Spooner* v. *Hilbish*, 92 Va. 341, 23 S. E. 751, 753, we find this clear statement by Riely, J.: "A gift is a contract without a consideration, and, to be valid, must be executed. A valid gift is, therefore, a contract executed. It is to be executed by the actual delivery by the donor to the donee, or some one for him, of the thing given, or by delivery of the means of obtaining the subject of the gift, without further act of the donor to enable the donee to reduce it to his own possession. 'The intention to give must be accompanied by a delivery, and the delivery must be made with an intention to give.' Otherwise there is only an intention or promise to give, which, being gratuitous, would be a mere nullity. Delivery of possession of the thing given or of the means of obtaining it so as to make the disposal of it irrevocable, is indispensable to a valid gift."

Other pertinent cases are, *Ewing* v. *Ewing*, 2 Leigh (29 Va.) 344; *Lee's Executor* v. *Boak*, 11 Gratt. (52 Va.) 185; *Shankle* v. *Spahr*, 121 Va. 607, 93 S. E. 605; *Swan* v. *Swan's Executor*, 136 Va. 522, 117 S. E. 858; *Matthews* v. *Hanson*, 145 Va. 618, 134 S. E. 568.

In *Gardner* v. *Moore's Admr.*, 122 Va. 14, 94 S. E. 162, 163, we find this, the court speaking through Burks, J.: "Undoubtedly, title to personal property of all kinds may be passed by gift, and, when so passed, it is as irrevocable as if passed by purchase; but in order to possess this quality the gift must be complete. The thing must be delivered, else the gift is incomplete. An agreement for future delivery is nothing more than a promise to make a gift. The delivery, however, may be actual, constructive or sym-

bolical, depending upon the nature of the thing given. But there must be delivery of some kind, else there is no gift unless it be by way of declaration of a trust, which is not claimed in the instant case."

Clearly then, the plaintiff, under the facts shown here, cannot recover unless defendant is bound by a promise which is supported by a consideration sufficient to support the action.

It is often quite difficult to determine in such cases whether or not there is such a consideration.

1 Williston on Contracts, section 112, page 232, thus illustrates the difficulty: "If a benevolent man says to a tramp: 'If you go around the corner to the clothing shop there, you may purchase an overcoat on my credit,' no reasonable person would understand that the short walk was requested as the consideration for the promise, but that in the event of the tramp going to the shop the promisor would make him a gift. Yet the walk to the shop is in its nature capable of being consideration. It is a legal detriment to the tramp to make the walk, and the only reason why the walk is not consideration is because on a reasonable construction it must be held that the walk was not requested as the price of the promise, but was merely a condition of a gratuitous promise. It is often difficult to determine whether words of condition in a promise indicate a request for consideration or state a mere condition in a gratuitous promise. An aid, though not a conclusive test, in determining which construction of the promise is more reasonable is an inquiry whether the happening of the condition will be a benefit to the promisor. If so, it is a fair inference that the happening was requested as a consideration. On the other hand, if, as in the case of the tramp stated above, the happening of the condition will be not only of no benefit to the promisor but is obviously merely for the purpose of enabling the promisee to receive a gift, the happening of

the event on which the promise is conditional, though brought about by the promisee in reliance on the promise, will not properly be construed as consideration. In case of doubt where the promisee has incurred a detriment on the faith of the promise, courts will naturally be loath to regard the promise as a mere gratuity and the detriment incurred as merely a condition. But in some cases it is so clear that a conditional gift was intended that even though the promisee has incurred detriment, the promise has been held unenforceable."

█  Under the first ground of demurrer in this case it is contended for the defendant that this was not a promise for a consideration, but on the contrary was a mere condition of the proposed gift.

We conclude, however, that there was sufficient consideration to support the gift, and but for the other question involved this would determine the case. The object of the defendant unquestionably was to attract persons to the auction sale with the hope of deriving benefit from the crowd so augmented. Even though persons attracted by the advertisement of the free automobile might attend only because hoping to draw the automobile, and with the determination not to bid for any of the lots, some of these even might nevertheless be induced to bid after reaching the place of sale. So we conclude that the attendance of the plaintiff at the sale was a sufficient consideration for the promise to give an automobile, which could be enforced if otherwise legal.

█  *Second.* The second ground of demurrer, however, requires the determination of the other question thereby raised, *i. e.*, whether or not the drawing for the automobile constituted a lottery, and therefore prevents any recovery.

The plaintiff seems to rely on *Cardwell* v. *Kelly*, 95 Va. 570, 28 S. E. 953, 954, 40 L. R. A. 240, specifically, upon this language: "In a case of the nature of that at bar, the

court will be governed in some degree, at least, by its particular circumstances. It will consider whether the good of the public and the policy of the law will be subserved, and the making of such contracts be discouraged, by enforcing the contract in the case before it, or by refusing to do so, and will do the one or the other as will advance the interests of the public and the policy of the law."

In that case the question arose between a receiver of an insolvent corporation, who had sued a subscriber to its capital stock, for the benefit of its creditors. Of course, every expression of the court should be construed with reference to the questions arising in the particular case. The opinion stated: "The sole question for decision is whether a subscriber to the stock of a corporation, who was allured to make the subscription by the chance of being allotted a lot or lots in a drawing for distribution of lots of unequal value, can by reason thereof escape the payment of the money due on his subscription, not to the corporation, but to its creditors, whose debts were contracted upon the faith of his and other subscriptions." Then after stating that the corporation was insolvent, and that its creditors could not be paid their debts unless the assessment of forty-five per centum made by the court upon the stockholders could be collected, the opinion proceeds: "In conformity to the Constitution of the State, the buying, selling, or transferring of tickets or chances in any lottery is prohibited by statute, and a penalty therefor prescribed. Constitution, article V, section 18; Code, sections 3825, 3826. Whether the scheme out of which this controversy has arisen is within the prohibition of the statute, we express no opinion, as, in the view we take of the case, it is unnecessary to decide that question."

The court in that case clearly recognizes the rule that contracts founded upon an illegal consideration, as being contrary to public policy and forbidden by law, are void,

and emphasized the fact that the question there was not between the corporation and its stockholders, but between the creditors of the corporation and its stockholders, saying: "If the corporation was seeking to recover the subscription, and was solvent, then, inasmuch as its payment would enable the unlawful design of a lottery to be carried out, it would be proper to allow the defendant to show the unlawful purpose, in order to defeat the transaction and prevent similar ones in the future; but to allow him to do so after it has become insolvent would confer immunity from liability on the guilty, and not restrain, but encourage, such illegal schemes."

So that case tends to sustain the ruling of the trial court, that the plaintiff here cannot recover if the automobile is as a prize drawn in a lottery.

Lord Mansfield, in *Holman* v. *Johnson*, 1 Cowper 343, thus stated the principle, which we believe has since been universally recognized: "The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this; *ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to exchange sides, and the defendant was to bring his action against the plaintiff, the

latter would then have the advantage of it; for where both are *equally* in fault, *potior est conditio defendentis*."

There have been a great many cases, and we shall not undertake to review them. It seems to be perfectly well settled that where there is a payment of money for a chance to draw a prize by lot, this is a lottery. These comparatively modern cases follow and are in accord with the older precedents.

In *Rountree* v. *Ingle*, 94 S. C. 231, 77 S. E. 931, 45 L. R. A. (N. S.) 776, Ann. Cas. 1915A, 1002, these facts were shown: A merchant gave cards to his customers, bearing numbers, for goods purchased, placing a number corresponding to each card in a box, drawing out one and giving to the holder of the corresponding numbered card a range worth $65.00 as a prize. This was held to be engaging in a lottery, and so were the parties accepting the cards. It was therefore adjudged that one who received the winning card, but who lost it, could not maintain an action against one who presented the winning card and received the prize, and this whether he obtained it by fair or dishonest methods. It appeared as a fact in that case that the plaintiff originally held the winning card, but it was among those he dropped in his yard, and some one else found it there and gave it to the defendant, Ingle.

In *Floyd M. Glover, Doing Business as Flint Oil Company*, v. *William F. Malloska, Doing Business as Lincoln Petroleum Products Company*, 238 Mich. 218, 213 N. W. 107, 108, 52 A. L. R. 77, these facts appeared: A wholesale dealer in gasoline and oils gave away at exhibitions and sold to his customers tickets, which they gave away, and which entitled the holders to a chance to draw an automobile at monthly drawings, and it was held that this constituted a lottery. The plaintiff there was a competing dealer, who showed that he had lost business by reason of this lottery scheme, and he was held entitled to injunctive relief. Among

other things, the court says this: "The often asserted essentials of a lottery, viz, consideration, prize and chance, were all present. Malloska sold the tickets to his customers for distribution by them in the course of trade to further his pecuniary interest, and this established consideration. The fact that Malloska gave some tickets away at fairs and exhibitions and the purchasers of tickets for use in the retail trade gave them away, without pay, to their customers, and sometimes to others, did not at all save the scheme from being a lottery. There was a prize furnished by Malloska at each monthly drawing and paid for, in whole or in part, by his customers in the purchase of tickets to be given out in the course of retail trade. Chance determined the winners at the drawings."

In *State of Washington* v. *Simon Danz*, 140 Wash. 546, 250 Pac. 37, 38, 48 A. L. R. 1109, note, we find it held that "the distribution by a theatre of produce contributed by merchants for advertising purposes as an additional attraction one night each week, according to numbers designated by chance on tickets furnished with the tickets of admission, may be found to be within the prohibition of a statute defining a lottery as a scheme for the distribution of money or property by chance among persons who have paid or agreed to pay a valuable consideration for the chance, and it is immaterial that free tickets to the drawing are offered to persons not purchasing theatre tickets." After referring to the elements of a lottery as being (1) the distribution of money or property; (2) chance; and (3) a valuable consideration paid, or agreed to be paid, for the chance; and that the name by which the enterprise is called is immaterial; the opinion proceeds: "But the chief argument on behalf of the appellants on this branch of the appeal is that the element of consideration for a chance in the drawing was lacking. But this, under the facts in this case, cannot be determined as a matter of law in favor of the appellants.

Manifestly, it was the plan and purpose of the appellants to get additional money by putting on the chance drawing. The testimony shows it was put on as an additional drawing card. The patrons knew it was 'country store' night. They paid a valuable consideration to participate. The fact that they paid the same price charged on other nights when the theatre was running a more popular play without an added attraction is not conclusive or controlling in favor of the appellants. A valuable consideration was paid. What did the purchaser get? Not simply a ticket for the screen show, but a ticket to that and to the chance drawing. The appellants and their patrons so understood and intended it. That was the plan and purpose for which the consideration was paid. Nor is the fact that free tickets were offered to outsiders material in any controlling sense. None such were given out as a matter of fact, and, if there had been, it would not of itself have made any difference. If in the flourishing days of the Louisiana lottery its management had advertised that it would give a free ticket to the president of every bank in the city of New Orleans, that would not have changed the scheme from a lottery, whether or not any one or all of such free tickets were accepted."

In 1868, in construing the revenue act requiring the payment of a tax for the operation of a lottery, where the plan was that the purchaser of a $50.00 lot received a ticket entitling him to a share or chance in a distribution by lot of other parcels or lots of various sizes and differing value, it was held that that was a lottery and therefore subject to the tax. *United States* v. *Olney*, 1 Deady 461, 1 Abb. (U. S.) 275, Fed. Cas. No. 15,918.

In *Whitley* v. *McConnell*, 133 Ga. 738, 66 S. E. 933, 27 L. R. A. (N. S.) 287, 134 Am. St. Rep. 223, the plan was to subdivide a tract of land to be sold as lots, and each purchaser of a lot was to have a chance to draw another

lot free, it was held that this being a scheme in the nature of a lottery, it would not be enforced. 17 R. C. L. 1224.

The reasons which underlie these decisions clearly apply here. The purpose of the scheme was to attract bidders to the auction sale, and as an inducement to attend the sale each white person over sixteen years of age who attended the sale, whether he bought or not, was given a chance in the lottery, and this contravenes public policy and avoids the agreement.

For the reasons which we have indicated, we conclude that the judgment of the trial court sustaining the demurrer is without error.

*Affirmed.*