STATE OF MAINE
*vs.*
ROSARIO A. BUSSIERE, APLT.

Androscoggin.    Opinion, October 1, 1959.

*Gaston M. Dumais,*
*Philip M. Isaacson,* for plaintiff.

*Willis A. Trafton,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J. On report. The agreed statement of facts shows that defendant was found guilty in the Lewiston Municipal Court on a complaint charging that on the 4th day of December, 1958, he was unlawfully concerned in a certain "lottery, scheme and device of chance" by giving away a ticket purporting and designed to entitle a person to a chance of drawing and obtaining a prize and thing of value to be drawn in said lottery, scheme or device of chance. The defendant is a supermarket proprietor in Lewiston. He caused to be put into operation at his supermarket a copyrighted plan bearing the name of "Goodwill Cash Night." On each shopping day for a week preceding and on Thursday, December 4, 1958, a registration desk was located inside the supermarket but not within the shopping or display area. The public was invited to register by signing registration sheets on the desk. The name and address of the registrant was placed on the card. Upon so doing each registrant was presented with a qualification card entitling him to participate in "Goodwill Cash Night." Upon registration the name of the registrant was transcribed onto two cards, one filed alphabetically and the other numerically. A stub with a number corresponding to that given the name of the registrant was put into a drum, and from this drum a stub was drawn. The person whose assigned number corresponded with the number on the withdrawn stub became the winner of the prize. In order to receive the prize on the spot, the winner was required to present himself on the platform within three minutes after the announcement of his name. If he did not present himself within such time, however, he could report to the store manager in person before 8:45 p.m. and claim the award. If he was found properly qualified, he would be paid the award on the platform the following Thursday night upon

properly identifying himself to the judges who were chosen at that time. The parties stipulated that no payment, purchase, or consideration of any kind was required to become registered and to participate in Goodwill Cash Night, so called. Under the plan a drawing was held in the parking lot adjacent to the defendant's store at 7:45 p.m. each Thursday. On the night of December 4, 1958, at approximately 7:45 p.m. in the parking lot outside defendant's supermarket a public drawing was held to determine the winner of the weekly award. The master of ceremonies prior to the drawing of the prize explained the general nature of the plan and also made reference to the business being conducted by the defendant, calling attention to some of the merchandise on sale at defendant's store. Judges were chosen from the audience. A person from the audience drew from the revolving drum a stub containing a number. This number corresponded with the number serially given to one of the registrants. The name of such registrant was announced as the winner. The winner was present and received a cash award of $100.

In the Lewiston Municipal Court the defendant was found guilty of the offense charged and appealed to the Superior Court of Androscoggin County, and this case comes here on report from that court.

The statute under which the complaint in this case was made is set forth in R. S., 1954, Chap. 139, Sec. 18, and reads as follows:

"**Sec. 18. Lotteries and schemes of chance; printing of tickets prima facie evidence.** — Every lottery, policy, policy lottery, policy shop, scheme or device of chance, of whatever name or description, whether at fairs or public gatherings or elsewhere, and whether in the interests of churches, benevolent objects or otherwise, is prohibited; and whoever is concerned therein, directly or indirect-

ly, by making, writing, printing, advertising, purchasing, receiving, selling, offering for sale, giving away, disposing of or having in possession with intent to sell or dispose of, any ticket, certificate, share or interest therein, slip, bill, token or other device purporting or designed to guarantee or assure to any person or to entitle any person to a chance of drawing or obtaining any prize or thing of value to be drawn in any lottery, policy, policy lottery, policy shop, scheme or device of chance of whatever name or description; by printing, publishing or circulating the same, or any handbill, advertisement or notice thereof, or by knowingly suffering the same to be published in any newspaper or periodical under his charge or on any cover or paper attached thereto; or who in any manner aids therein or is connected therewith, shall be punished by a fine of not less than $10 nor more than $1,000, to be recovered by complaint or indictment to the use of the county, and he may further be punished by imprisonment for 30 days on the 1st conviction, 60 days on the 2nd conviction and 90 days on the 3rd conviction. All lottery tickets or materials for a lottery, procured for that purpose, shall be disposed of as provided in section 13, excepting that all personal property used for prizes in any such lottery or device of chance shall be ordered forfeited and turned over to an officer to be sold by him and the proceeds paid into the treasury of the county where seized. The printing, advertising, issuing or delivery of any ticket, paper, document or material representing or purporting to represent the existence of, or an interest in a lottery, policy lottery, game or hazard shall be prima facie evidence of the existence, location and drawing of such lottery, policy lottery, game or hazard, and the issuing or delivery of any such paper, ticket, document or material shall be prima facie evidence of values received therefor by the person or persons, company or corporation who issues or delivers or knowingly aids or abets in the issuing or delivering of such paper, ticket, document or material. (R. S. c. 126, Sec. 18.)"

Since this case arose, this statute has been amended by the addition of the following paragraph:

"This section shall not prohibit the awarding of a prize or thing of value as the result of a drawing of a signed slip or certificate where there is no monetary consideration required from the signatory in order to participate in the drawing." P. L., 1959, Chap. 310.

This case is one of novel impression in this state. The court is called upon to determine whether or not a merchant in order to stimulate a legitimate business may legally give away cash awards, by means of a drawing, under circumstances in which no person is required to pay money or make purchases for the right to participate in the drawing.

The State contends that:

1. The Legislature intended to exclude consideration as an element of the crime of *lottery*.

    (a) If consideration is a necessary element of such crime, that any consideration sufficient to support a simple contract is adequate.

2. That the Legislature intended to prohibit *schemes of chance* whether consideration was or was not present.

The respondent contends that the State must prove as an essential element of its case the parting of money or money's worth for the chance of gain.

In the instant case the court must be satisfied that the plan in question is a *lottery, scheme, or device of chance* prohibited by the terms of the statute. Once the plan is brought within the meaning of the statute, then its provisions are very broad as to those persons who may be liable to punishment for participation therein. The giving away of a ticket entitling a person to a chance of drawing

a prize becomes a crime only if the prize is drawn in a *lottery, scheme, or device of chance.*

We shall discuss the issues in this case in the following order: (1) Is the plan a lottery within the meaning of the statute; (2) Is the plan a scheme of chance prohibited by the statute?

Legislatures have been reluctant to attempt to define the term "lottery." This reluctance is probably due to the fact that a precise definition will enable ingenious and unscrupulous persons to attempt to devise some plan which may not be within the letter of the definition given but which nevertheless is within the scope of the mischief which the law seeks to remedy. Our Legislature has not defined the term, and we do not find any precise definition in any of our decisions. However, it is generally agreed among the authorities that there are three essential elements necessary to constitute a lottery: (1) prize, (2) chance, and (3) consideration. *Federal Communications Commission* v. *American Broadcasting Co.,* 347 U. S. 284, 98 L. Ed. 699; *State* v. *Big Chief Corporation,* 64 R. I. 448, 13 A. (2nd) 236; *Goodwill Advertising Company* v. *Amusement Corporation,* 133 A. (2nd) 644 (R. I.) ; *State* v. *Eames,* 87 N. H. 477, 183 A. 590; *Commonwealth* v. *Wall,* 295 Mass. 70, 3 N. E. (2nd) 28; 34 Am. Jur. 647 and cases cited; 54 C. J. S. 845 and cases cited. See also the following annotations: 57 A. L. R. 424; 103 A. L. R. 866; 109 A. L. R. 709; 113 A. L. R. 1121.

It is conceded that the first two elements are present in the instant case. The defendant contends that a pecuniary consideration is an essential element of a lottery. The State contends that no consideration is necessary, but if it should be decided that consideration is necessary, that any consideration sufficient to support a simple contract is adequate.

The lottery statutes in many states, by express provision, require a pecuniary consideration as one of the elements of the crime.

Courts in some jurisdictions have held that any consideration necessary to establish a simple contract is sufficient. Among the decisions so holding are the following: *Commonwealth* v. *Lund*, 142 Pa. 208, 15 A. (2nd) 839; *Maughs* v. *Porter*, 157 Va. 415, 161 S. E. 242; *Barker* v. *State*, 56 Ga. App. 705, 193 S. E. 605; *Furst* v. *A. & G. Amusement Co.*, 128 N. J. 311, 25 A. (2nd) 892; *Affiliated Enterprises, Inc.* v. *Waller*, 1 Terry (Del.) 28, 5 A. (2nd) 257; *The State of Nebraska ex rel.* v. *Grant*, 162 Neb. 210, 75 N. W. (2nd) 611; *Regez* v. *Blumer*, 236 Wis. 129, 294 N. W. 491; *Lucky Calendar Co., Inc.* v. *Mitchell H. Cohen*, 19 N. J. 399, 117 A. (2nd) 487. These cases, most of which are theatre "Bank Night" cases, hold that a consideration is present either in the detriment to a participant who is obliged to register for the chance of winning a prize, or in the benefit accruing to the promoter in increased business. We note that many of these cases have an element nonexistent in this case in that some of the participants actually paid a pecuniary consideration in the form of an admission price, usually to a theatre engaged in operating the "Bank Night" scheme, which admission price gave such participants an advantage, or a seeming advantage, over those persons who had not paid such an admission fee.

In other jurisdictions, in criminal proceedings under lottery statutes, what appears to us to be the better view requires that a valuable consideration be risked by a participant before criminal proceedings will lie. *Ex parte* Gray 23, Ariz. 461, 204 Pac. 1029; *Cross* v. *People*, 18 Colo. 321, 32 Pac. 821; *Commonwealth* v. *Wall, supra; State* v. *Big Chief Corporation, supra.* Accord: *Federal Communications Commission* v. *American Broadcasting Co., supra; Goodwill Advertising Co.* v. *Amusement Corporation, supra.*

In New Jersey it has been held that a consideration is not an element of the crime of lottery under the statutes of that state. *Lucky Calendar Co., Inc.* v. *Cohen, supra.* The State strenuously urges us to adopt this view.

The question of whether or not consideration is a necessary element of a lottery, and if so, what form such consideration must take, is an issue not before directly passed upon by our court. In those cases which have reached this court under our lottery statutes, the element of pecuniary consideration obviously was present and did not become an issue in the case.

In the case of *State* v. *Googin,* 117 Me. 102, 102 A. 970, the court inferred that a pecuniary consideration might be a necessary element of a lottery. The complaint in that case was brought under the provisions of R. S., 1916, Chap. 130, Sec. 18, now 1954 Chap. 139, Sec. 18. The defendant was the proprietor of an automatic vending machine. Upon depositing a nickel the operator would receive a package of gum, and at times the machine would deliver, in addition to the gum, so called "trade checks" in varying amounts, each having a trade value of five cents. The court held that the operation of the machine was a violation of the lottery statute, and in referring to the interpretation of R. S., 1916, Chap. 130, Sec. 18, said:

> "In *Lang* v. *Merwin,* 99 Me. 486, an interpretation has been given of the statute in this language: 'It would seem from these to have been the intention of the legislature to prohibit every *pecuniary* transaction in which pure chance has any place. . . . .' " (Emphasis ours.)

The parties in this case have stipulated that no payment, purchase, or consideration of any kind was required to become registered and to participate in "Goodwill Cash Night." The State concedes that no participant was required to pay money or make purchases from the promoter

in order to take part in the plan. Under the facts of the instant case all participants were on an equal basis with non paying a consideration, however small, for the privilege of having an advantage or seeming advantage over any other. We are satisfied that under the plan operated by the defendant in this case, free participation by all was an absolute reality and not a fiction. The case of the State must stand or fall on the right of the defendant under the plan used in this case to give away, for the purpose of advertising his merchandise, such sums of money as he deems he can afford, to people who part with no money for the privilege of participation in the plan, and whose only risk is that of exposing themselves to normal sales pressure of the promoter.

We cannot go along, under the facts in this case, with those jurisdictions which hold that consideration is not an element of lottery, or with those jurisdictions which hold that consideration is necessary, but may consist in anything which is a detriment to a participant or a benefit to the promoter. We feel that the plan of the defendant lacks one element which is the source of all evil connected with lotteries or gambling; that of a person risking or hazarding something of value, however small, with the hope or opportunity of obtaining a larger sum by chance.

The State also argues that any scheme in which chance is a predominating element is illegal in the State of Maine; that the words "policy, policy lottery, policy shop, scheme, or device of chance" were either intended to serve as an aid in defining a lottery, or are a recital of additional offenses in the nature of a lottery. The complaint charges the defendant with being "concerned with a certain lottery, scheme, or device of chance" and we are concerned with the meaning of these words only.

A brief history of some phases of legislation involving lotteries may be of some benefit in determining the meaning of these words.

In the early years following our separation from the Commonwealth of Massachusetts certain lotteries for the purpose of raising public or semi-public funds were authorized by our Legislature. In 1821 our Legislature made it an offense for any person within the state to sell, give, or otherwise dispose of tickets, or part of any ticket, in any lottery not authorized by the laws of this State or of the United States. Laws of Maine, 1821, Chap. XXVIII, Sec. 2. Later the exemption as to lotteries authorized by Congress or by the State was removed from our laws. The first appearance of the words "scheme or device of chance" is in legislation relating to lotteries enacted by virtue of P. L., 1855, Chap. 173, Secs. 1 and 5. Sec. 1 provides that it shall be an offense for any person "to make or aid in making any lottery or scheme for the distribution of any property, real or personal, or any right, interest or claim therein by any mode depending upon chance, raffle, or lot." Sec. 5 makes unlawful and a common nuisance "every lottery, scheme, or device of chance, in the nature of a lottery, by whatever name it may be called." In the Revision of 1857, Chap. 128, Sec. 3, "Every lottery, scheme, or device of chance, of whatever name or description, is prohibited and declared a nuisance;" and penalties are provided for being connected in any way with such lotteries, schemes, or devices of chance. The Legislature later prohibited lotteries, schemes, or devices of chance, of whatever name or description, at fairs or public gatherings whether in the interests of churches, benevolent organizations or otherwise. P. L., 1877, Chap. 176. In 1895 the words "policy lottery" and "policy shop" were added. P. L., 1895, Chap. 66.

In our early history a number of lotteries were authorized by the Legislature. See Chap. CCXIX Private Laws of 1823 relating to granting a lottery to the Cumberland and Oxford Canal Corporation in the sum of Fifty Thousand Dollars for the purpose of enabling it to make and

complete a canal. Chap. CCCCXXXI Private Laws of 1826, authorizing a lottery to raise Twenty-five Thousand Dollars to encourage steam navigation in the state. Chap. CCCCXXX Private Laws of 1826, authorizing a lottery to raise Four Thousand Dollars for erection of a bridge.

The Legislature in enacting these laws set forth in detail the method of conducting the authorized lotteries and the rules for disposing of tickets and drawing prizes.

The classic lotteries in vogue in these early days looked to advance cash payments by the participants as the source of its profits. The three elements of prize, chance, and valuable consideration were obviously present.

Did the addition of the words "scheme or device of chance" eliminate any of the essential requirements of a lottery? We think not.

In *State* v. *Willis,* 78 Me. 70 decided in 1885, the respondent was indicted for nuisance for participating in a "lottery, scheme, or device of chance." Defendant demurred. Our court said:

> "There is no contradiction in the terms. They are descriptive of only one thing — the pleader trying to describe the offense by as apt a word as possible. The word lottery has no technical meaning. A lottery is nothing more or less than a scheme or device of chance."

We do not believe that it was the intention of the Legislature in adding these words to the lottery law to eliminate the elements of prize, chance, or valuable consideration as essential to the crime of lottery, or to establish a new crime in which any of these elements are eliminated.

We feel that it is more reasonable to believe that it was the intention of the Legislature to bring clearly within the terms of the statute schemes possessing all of the essential

elements of a lottery, but devised to evade the law by ingeniously disguising or concealing one or more of those elements.

In order to constitute a crime under the statute in question, three elements must be present, *viz.:* (1) prize, (2) chance, and (3) a consideration having a pecuniary value paid directly or indirectly by some participant. Under the facts in this case the third element is not present, and the defendant cannot be found guilty of the crime charged.

According to the stipulation the entry will be

*Judgment for the Respondent.*