156 So.2d 550 (1963)
Ed BLACKBURN, Jr., Sheriff of Hillsborough County, Florida, and the State of Florida, Appellants,
v.
Jack IPPOLITO, Appellee.
No. 3660.
District Court of Appeal of Florida. Second District.
September 11, 1963.
Rehearing Denied October 15, 1963.
Richard W. Ervin, Atty. Gen., Tallahassee; Robert R. Crittenden, Asst. Atty. Gen., Lakeland; Paul B. Johnson, State Atty., Tampa; and John R. Lawson, Jr., Asst. State's Atty., Tampa, for appellants.
Frank Ragano and Marvin Solomon, Tampa, for appellee.
AKRIDGE, WM. G., Associate Judge.
Appellant, respondent below in a habeas corpus proceeding, has appealed an Order of the lower court discharging Appellee from custody.
An agreed statement of facts showed that the appellee, Jack Ippolito, was the manager of a grocery supermarket which conducted a "Good-Will Cash Night." Participants were required to register their name and address at a desk located just inside the doors of the market, obtain a card and have it *551 punched weekly in order to participate in the drawing of cash prizes held on Tuesday evenings in the parking lot at the market. It was not necessary to purchase any merchandise to obtain a card, or to have the card punched. Presence in the parking lot was required within fifteen minutes of the drawing.
The agreed statement of facts further showed that the sales were increased on Tuesday nights but decreased on Mondays and Wednesdays, resulting in no increase in overall business.
Appellee was arrested on a charge of operating a lottery in violation of Section 849.09, and brought habeas corpus proceedings in the lower court, and after a hearing on the agreed statement of facts appellee was discharged.
It was conceded by the State and the Appellee that to constitute a lottery under case law three essential elements must be present, viz:
1. A prize
2. An award of a prize by chance
3. Consideration
and the agreed facts admitted that two of the necessary elements were present, (1) a prize, (2) an award of a prize by chance. The question before the lower court was whether consideration, the third element, was present in the scheme. The appellee contends that pecuniary consideration is necessary to support a conviction, and is absent. The State contends that the only consideration necessary to sustain a conviction is such consideration as is necessary to establish a simple contract. The lower court held that there must be pecuniary consideration for a conviction of a lottery and since no pecuniary consideration was necessary to participate in appellee's scheme the lottery element of consideration was lacking and discharged appellee.
The question before this court is whether under the laws of the State of Florida to sustain a lottery conviction it is necessary that pecuniary consideration be present, or is it sufficient that only such consideration need be present that would establish a simple contract.
"Lotteries have been known, in one form or another, from Biblical days to the present time. Innumerable definitions have been given of them, but in all of these it is to be noted that there is little real difference, other than in the mode of expression. Webster's International Dictionary, 2nd Ed., defines a lottery as being: `A scheme for the distribution of prizes by lot or chance, especially a scheme by which one or more prizes are distributed by chance among persons who have paid or promised a consideration for a chance to win them. * * *' This definition was approved in Horner v. United States, 147 U.S. 449, 13 S.Ct. 409, 27 L.Ed. 237. See also 34 Am. Jur. 646.
"The English definition of a lottery, based upon judicial decisions, states that a lottery is any scheme, device or plan for distributing prizes by lot or chance. While the elements of a lottery are not enumerated, the English concept of a lottery includes `consideration' and follows the same formula that is applied by the American courts, declaring that a lottery is any gambling scheme which contains elements of (1) prize, (2) chance, (3) consideration. In the book, Flexible Participation Lotteries, Williams (1938), Sections 192-195, lotteries are shown to be divided generally into three distinct classes, or types. These are: (1) Closed Participation  this type being any lottery in which the attendant restrictions of purchase of goods, tickets, etc., are a condition precedent to participation. These are uniformly declared to be lotteries. (2) Open Participation  in this class none of the participants are required to do anything in order to participate, and no offer of any kind is extended as *552 an inducement for participation. (3) Flexible Participation  this type professes to be free, but is closely related to the closed participation type. The essential difference lies in the fact that this scheme is relaxed sufficiently to include some who are, theoretically, non-paying participants. Although represented as being free, there are, ordinarily, restrictive conditions which serve to make this scheme much more favorable to paying participants than to non-paying, although in theory their chances are co-equal. There is a closed participation within the flexible scheme, and a better or deluxe chance at the prize can be had only by payment of money for admission, or the price of participation.
"This type of lottery first appeared in this country about 1889, and at that early date provided the basis for extensive litigation in the famous case of Yellow-Stone Kit v. State, 88 Ala. 196, 7 So. 338, 7 L.R.A. 599, 16 Am. St.Rep. 38. Since that time there have been a multitude of schemes put into operation under different names, all of which have been based upon virtually the same plan of operation, with variations only in the name and details of operation." State ex rel. Draper v. Lynch, 192 Okla. 497, 137 P.2d 949.
The able judge of the lower court in his opinion pointed out that it was impossible to reconcile all the cases on this subject and that there was no case in Florida on point, with which we agree.
The learned judge chiefly relied upon the case of Brice v. State (1951) 156 Tex. Cr.R. 372, 242 S.W.2d 433, and State of Maine v. Bussiere, (1959) 155 Me. 331, 154 A.2d 702. Bussiere involved a promotional scheme identical to the one involved here. As a matter of fact it is the same scheme promoted by the same advertising agency. The Maine court in the Bussiere case recognizes that contract consideration to support a lottery is sufficient in some states, in the following language:
"Courts in some jurisdictions have held that any consideration necessary to establish a simple contract is sufficient." Citing cases 154 A.2d page 705.
The Maine court in said case also recognizes that in other states pecuniary consideration was necessary, in the following language:
"In other jurisdictions, in criminal proceedings under lottery statutes, what appears to us to be the better view requires that a valuable consideration be risked by a participant before criminal proceedings will lie." Citing cases 154 A.2d page 705.
In State v. Bussiere, the Maine court held that the same promotional scheme as involved here did not violate the Maine lottery laws because of the absence of pecuniary consideration. After Bussiere (the appellant) was charged the Maine Legislature amended the lottery statute so that now Maine by legislation adheres to the necessity of pecuniary consideration to sustain a lottery conviction
Another case that sustains appellee's contention is the recent case of Cudd et al. v. Aschenbrenner, (Or. 1962) 377 P.2d 150, involving a scheme almost identical with the one involved here. The Oregon court held same was not a lottery, rejecting the contract consideration theory and adhering to the pecuniary consideration theory.
For convenience we will refer to the necessity of contract consideration as the "contract theory" and to pecuniary consideration as the "pecuniary theory."
Dorman v. Publix-Saenger-Sparks Theatres, (1938) 135 Fla. 284, 184 So. 886, 120 A.L.R. 403 was a case in which a participant sued to recover a "bank night prize." In that case the participants were required to register and the court said:
"The consideration required to support a simple contract need not be money or anything having a monetary value, *553 but may consist of either a benefit to the promisor or a detriment to the promisee."
and
"It is not necessary that a benefit should accrue to the person making the promise; it is sufficient that something valuable flows from the person to whom it is made, or that he suffer some prejudice or inconvenience, and that the promise is the inducement to the transaction. Indeed, there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not."
Little River Theatre Corporation v. State (1939) 135 Fla. 854, 185 So. 855, was a suit to enjoin "bank night" as a nuisance. In this case participants were required to register at the theater and be present within three minutes after the prize was drawn. If he had no ticket he was let in free if he won. Of the argument that there was no necessity to buy a ticket and therefore there was no consideration sufficient to constitute an clement of a lottery the Court said:
"The third essential being a consideration, the facts show that the attendance at the theater on Bank Night is from two to seven times greater than on the other night when the same picture was shown. Bank Night advertises the theater, increases the attendance, and the receipts show a material enhancement. When we visualize substance rather than form, the theater management desire to fill the theater by the Bank Night method." (emphasis supplied) 185 So. page 861.
Lotteries are clearly illegal in Florida, but legislatures generally, ours among them, have been reluctant to define the term "lottery." This reluctance may be due to the fact that a precise definition will enable ingenious and unscrupulous persons to attempt to devise some plan which may not be within the scope of the mischief which the law seeks to remedy. State v. Bussiere (1959) 155 Me. 331, 154 A.2d 702.
The fact that there is no precise definition either by the Florida Legislature or case law the Courts must decide what schemes are lotteries on a case by case basis.
As was said by the court in Federal Communications Commission v. American Broadcasting Company, 347 U.S. 284, 74 S.Ct. 593, 98 L.Ed. 699 (1953), viz:
"So varied have been the techniques used by promoters to cancel the joint factors of prize, chance, and consideration, and so clever have they been in applying these techniques to feigned as well as legitimate business activities, that it has often been difficult to apply the decision of one case to the facts of another."
The Supreme Court of Oklahoma in Knox Industries Corp. v. State ex rel. Scanland, (Okla. 1953) 258 P.2d 910, held a scheme somewhat similar to the one in the case at bar a lottery on the contract theory. In that case all that was necessary to qualify to win a prize was to go into any Knox service station or store and obtain a ticket, leave the stub in a container and where the express purpose of the enterprise was the creation of good will and the opportunity for advertisement of the Knox Company products, the Court 258 P.2d on page 913 reiterated its holding in the Lynch case, 192 Okla. 497, 137 P.2d 954, that consideration could be:
"[T]hings other than money can constitute a sufficient consideration, moving from the participants in such scheme to the operators without any cash outlay being made."
and 258 P.2d on page 913 further said:
"Admittedly defendants are not conducting a philanthropic endeavor. The *554 expressed purpose of this enterprise is the creation of good will and the opportunity for advertisement of defendants' products and merchandise. The resultant benefits from the public good will must be recognized. The value of the advertising can neither be doubted nor minimized, since the general acceptability of defendants' products is made known thereby. But, more than this, the rule requiring prospective participants to secure tickets in order to become eligible necessarily demands that such individuals appear at defendants' places of business. By such appearances they are, of course, subjected to the sales appeal of defendants' assorted merchandise. That this works to defendants' benefit must be conceded."
The Oklahoma Court further said 258 P.2d on page 914 that the following constituted sufficient consideration to brand the scheme a lottery, viz:
1. The expenditure of participant's time and inconvenience in going to some Knox store and asking for a ticket.
2. Prospective participants are subjected to the sales appeal of the merchandise offered for sale at defendants' stores and stations.
3. In case participant won he must expend further time and effort in appearing at the main office of the Knox Industries Corp. to claim the prize.
The same court in the case of State v. Lynch, 192 Okla. 497, 137 P.2d 949, which involves a promotional scheme for a theater known as "Policy night," was held to be a lottery even though no consideration was actually paid to obtain a policy, and the court 137 P.2d on page 953, had this to say relative to consideration:
"(4) Schemes of this kind are said to involve consideration in the following ways, and this means consideration flowing from the participants to the operator of the scheme in that: (1) The registrant is out his time and trouble in going to register in order to be eligible for participation; (2) registrants are subjected to the theater's sales appeal, of definite value to the theater; (3) the register makes up a convenient mailing list without cost to the theater, which is of definite value; (4) time and trouble is expended in attending the drawings to participate; (5) participants render services by advertising the scheme at large, and this is valuable because the radio and the mails are closed to such advertising; (6) registrants more often than not pay admission in order to participate more comfortably and have a superior chance to win; (7) presence of participants at the drawing, even outside, in response to defendant's scheme, and solely for purpose of participants therein. Maughs v. Porter, 1930, 157 Va. 415, 161 S.E. 242."
and further on said page:
"There is also a further consideration sometimes said to be present in the mass by reason of the collective contribution of the purchasers, in spite of the fact that some of them participate without paying for the privilege by purchase of admission tickets. See 34 Am.Jur. 648, and cases cited under footnote 2."
We hold that the contract theory is more compatible to the holding in the Dorman case, supra, and the Little River case, supra, and more in line with provisions of Sec. 849.09, Fla. Stat., F.S.A. We therefore choose, contrary to the lower court, to follow the cases holding to contract consideration: that the consideration present in the promotional scheme in the case at bar flowing from the participants to the operator of said scheme are those elements mentioned in the Knox and Lynch cases, supra.[1]
*555 We therefore hold that the able judge in the lower court was in error in holding that the promotional scheme of appellee was not a lottery, so the order appealed from is reversed with directions that the Writ of Habeas Corpus issued therein by the lower court be quashed and the petitioner remanded.
It is so ordered.
SHANNON, Acting C.J., concurs.
WHITE, J., dissents.
WHITE, Judge (dissenting).
The trial court gave the anti-lottery statute the strict construction applicable to criminal statutes and held, on an agreed statement of facts, that the mode of advertising employed by the defendant merchant was not criminally offensive. The opposite view is well stated in the majority opinion of this court. In my opinion, however, the holding of the trial court should be sustained.
The focal point of inquiry is the type of consideration necessary to stamp an operation as a lottery within the meaning of the statute, and my review of the subject convinces me that when the statute was enacted in 1895 the word "lottery" connoted a consideration of pecuniary value passing from the participant to the operator. See Lee v. City of Miami, 1935, 121 Fla. 93, 163 So. 486, 101 A.L.R. 1115. This guide-line, however, became somewhat blurred by two Florida civil cases decided respectively in 1938 and 1939, one being a case of nuisance abatement and the other a case of contractual estoppel with reference to so-called "Bank Night" drawings. These cases are cited and quoted in the majority opinion and will be discussed later in this dissent.
The Constitution of Florida simply prohibited lotteries[1] without defining the term. It did not impose criminal responsibility for violation of the prohibition, nor did it direct the enactment of legislation to that end. Thus the Constitution in effect left the definition of a lottery to the contemporary or then prevailing concept and left the question of criminality, if any, to the legislature.
Under the early common law a lottery was a permissible means of raising public and charitable funds. It was an operation by which the operator could also derive private profit from a pool by offering each participant a chance to win something of value over and above the value paid by him into the pool. It was not until lotteries and related forms of gambling became nuisances that they ran afoul of public sentiment, thereby evoking constitutional prohibitions, injunctive remedies and the enactment of penal statutes and ordinances. Lee v. City of Miami, supra. Thus a lottery, although not malum in se, became malum prohibitum.
In 1895 the Florida legislature passed the existing statute[2] which affirmed the constitutional prohibition of lotteries and made violation of the statute a felony; but, as noted in the majority opinion, the term "lottery" was not legislatively defined. There is little doubt, however, that gambling was the heart of the operation and that gambling involved a tangible risk to the participant as a consideration for his chance to win the stake. If this were not so, the stock arguments and reasons *556 for punitive laws against lotteries would be impertinent. Accordingly when the statute was passed a lottery consisted of (1) a prize (2) payment or agreement to pay a consideration of tangible or pecuniary value for a chance to win the prize and (3) an award by chance. This contrasts with the "simple contract" theory of consideration approved in the majority opinion. Under that theory the promise of a possible award by chance in return for a mere act of no pecuniary value would be sufficient to establish the offense and stamp the promisor as a felon.
Reference has been made to two Florida civil cases which might tend to confuse the picture. One of these is Dorman v. Publix-Saenger-Sparks Theatres, Inc., 1938, 135 Fla. 284, 184 So. 886, 120 A.L.R. 403. The court there held that the successful participant in a "Bank Night" drawing could recover the prize  if the consideration established upon remand for further proceedings should be found sufficient to support a simple contract to deliver the prize. It was actually a case of contractual estoppel in the event there was found to be no incidence of a lottery. The court noted that "Bank Night" may be conducted as a lottery or "in such manner that it is not a lottery." It would seem that the prosecution could derive little support from this case. The opinion quoted from State v. Eames, 1936, 87 N.H. 477, 183 A. 590, 592:
"`* * * The test by which to determine the answer to this question is not to inquire into the theoretical possibilities of the scheme, but to examine it in actual practical operation. If, as the state contends * * * "the great majority of people pay for such privilege," then it is an evasion and as such is not to be countenanced. As we understand the actual situation of this case, however, free participation is a reality. If this is so, then, regardless of the motive which induced the defendant to give such free participation, the scheme is not within the ban of the statute. Violation is shown only when, regardless of the subtlety of the device employed, the state can prove that, as a matter of fact, the scheme in actual operation results in the payment, in the great majority of cases, of something of value for the opportunity to participate.'" (Emphasis added)
After setting out the above quotation from State v. Eames the Dorman opinion summates this phase of the discussion as follows:
"So it appears by the weight of authority in this country that the scheme known as `Bank Night' may be conducted as a lottery or it may be conducted in such manner that it is not a lottery.
"On the face of the declaration it is not made to appear that it is a lottery because allegations necessary to show that the plan or scheme referred to when put into operation constituted a lottery are lacking. See State v. Eames, supra."
Accordingly the Dorman case did not reveal a lottery on the record then before the court on appeal. The portion of the Dorman opinion quoted in the instant majority opinion did not relate to lotteries co nomine but concerned only whether the declaration pleaded elements of a simple contract sufficient to give the successful participant the right to recover the prize. See 87 A.L.R.2d 659 (Annotation).
The second of the two Florida cases above referred to is Little River Theatre Corporation v. State, 1939, 135 Fla. 854, 185 So. 855, involving a proceeding to enjoin a "Bank Night" operation as a nuisance. Ostensibly it was possible for a non-customer to win the drawing. The court affirmed injunction apparently on the ground that the operation was in fact a nuisance with the characteristics of a lottery. The court, however, found "irreconcilable" conflict of authority as to the *557 definition of consideration in a lottery operation, and here a cautionary note may be sounded in view of the criminal aspect of the instant case. A sharp division of authority would indicate considerable doubt as to the meaning of consideration in its present context, and so it would be consistent with strict construction to apply here the interpretation that is most favorable to the accused. The Little River Theatre case should not, in any event, rule the decision in this case.
State v. Bussiere, 1959, 155 Me. 331, 154 A.2d 702, is a comparatively recent case involving facts parallel to the immediate case. In a well reasoned opinion the Maine court gave a definitive analysis of the kind of consideration necessary to a lottery and held that such consideration must have a pecuniary value paid directly or indirectly by the participant. It is not enough to show merely a consideration sufficient to support a simple contract.
A relatively recent opinion of the Attorney General of Florida, 055-347, December 30, 1955, reveals substantially the same view, viz., that a raffle is not illegal as a lottery unless the participants purchase chances:
"A lottery is operated contrary to Sec. 849.09 F.S., where a prize is disposed of by chance in a raffle to one of the persons who have purchased chances, because each of the elements necessary to constitute a lottery is present, viz., (1) a prize, (2) a consideration for the chance to win it, and (3) an award by chance. (Emphasis his)
* * * * * *
"There are certain types of prizes or awards such as door prizes which may be donated by a merchant or merchants purely for advertising or good will purposes, which may be given away by a chance or a `drawing' which do not constitute a lottery, there being no consideration present. * * *" (Emphasis added)
This appeal is from an order in a habeas corpus proceeding, and ordinarily we would not be concerned with the issue of guilt or innocence. However, the case is before us on an agreed statement of facts. From this statement it is apparent that the state could not prove that a majority or any one or any particular number of the participants in the defendant's advertising program actually paid anything of pecuniary value for the privilege of participation. In other words, based on the statement, the state could not prove that anything of ascertainable value was staked on the outcome. It therefore affirmatively appears that the charge alleged in the information cannot be sustained.
This is not a case where the facts differ from other cases of its kind and yet, being cognate, are subject to the same rule of law. This, as I see it, is a case in which this court's decision of reversal departs from the original concept of the alleged crime by giving it a definition different from that intended by the legislature. It seems to hinge criminal guilt on what the court thinks the legislature rightly could have meant rather than on what the legislature did mean in 1895 when it made the conduct and promotion of lotteries criminally unlawful.
The courts may personally regard certain activities as unrighteous or unwise, but in construing statutes we must be careful that judicial perspective is not lost in a subconscious urge to bend legislative policy to our own philosophical views. It was the legislature that made it a felony to conduct a lottery  an operation that by contemporary understanding contemplated a consideration of tangible or pecuniary value to make it a real gamble. If there is to be a different concept of consideration as an element of the crime it should be made clear, but the change should not be made by the court.
I would affirm.
NOTES
[1] While it does not affect this case, we note in passing that since this case arose the legislature has amended the lottery statute by adding Sec. 849.092, Fla. Stat., F.S.A., which defines and sanctions gifts by lot under certain circumstances to promote the sale of merchandise.
[1] Section 23 of Article III, Constitution of Florida, F.S.A. (1885).
[2] F.S. Sec. 849.09, F.S.A. under which the accused is charged.